[840 NYS2d 378]

G.K. ALAN ASSOC., INC., Plaintiff and Counterclaim Defendant-Appellant, v DERVAL LAZZARI, Defendant and Counterclaim Plaintiff-Respondent. ACME AMERICAN REPAIRS, INC., Counterclaim Plaintiff-Respondent; HARVEY KATZENBERG, Counterclaim Defendant-Appellant.

Second Department, July 10, 2007

APPEARANCES OF COUNSEL

*Moss & Kalish, PLLC*, New York City (*Mark L. Kalish* and *David B. Gelfarb* of counsel), for plaintiff/counterclaim defendant-appellant and counterclaim defendant-appellant.

*Lewis S. Sandler*, New York City, for defendant/counterclaim plaintiff-respondent and counterclaim plaintiff-respondent.

### OPINION OF THE COURT

SPOLZINO, J.

This is an action to enforce the payment of a fee allegedly due pursuant to a consulting agreement. By that agreement, the defendant retained the plaintiff to provide consulting services to him in connection with his management of certain corporations in which he is a major shareholder. The defense is that the plaintiff was a "faithless agent" which has forfeited its right to compensation. The plaintiff's alleged faithlessness, however, occurred in connection with unrelated services performed for the corporations pursuant to a separate agreement. This appeal thus requires that we decide to what extent, if any, the "faithless agent" rule entitles the defendant to avoid his personal

obligations under the consulting agreement on the basis of the plaintiff's alleged disloyalty to the corporations. We conclude that the forfeiture effected by the rule is available only as to compensation due with respect to services provided for the benefit of the principal as to whom the agent was disloyal. We further conclude that, even as to such compensation, the forfeiture does not apply to compensation that has been apportioned, unless the agent's performance with respect to those duties is tainted by the disloyalty. Since issues of fact are presented here that preclude the resolution of this matter by summary judgment, however, we modify the order of the Supreme Court.

The defendant, Derval Lazzari (hereinafter Lazzari), entered into two agreements on March 15, 2001. In one agreement, Lazzari agreed to purchase the stock owned by Harvey Katzenberg (hereinafter Katzenberg) in four corporations. In the other agreement, Lazzari personally agreed to retain the plaintiff, G.K. Alan Assoc., Inc. (hereinafter Alan), a corporation owned by Katzenberg and his wife, to perform consulting services "for the benefit and protection of the businesses" in which Lazzari had just purchased stock. Alan had been providing insurance brokerage services to the corporations for a number of years, and was responsible for placing the corporations' automobile and workers' compensation insurance. Lazzari paid the fees due under the consulting agreement until June 2003, when he allegedly discovered what he claimed to be misconduct on the part of Alan in connection with its insurance brokerage services for the corporations. Alan commenced this action shortly thereafter to enforce the terms of the consulting agreement.

By order dated June 21, 2005, the Supreme Court granted Lazzari's motion for leave to reargue Alan's prior motion for summary judgment dismissing his first and second affirmative defenses. Upon reargument, the Supreme Court denied that branch of Alan's motion and granted that branch of Lazzari's prior cross motion which was for leave to amend his answer by interposing three affirmative defenses and two counterclaims on behalf of himself and one of the corporations, Acme American Repairs, Inc. (hereinafter Acme). In essence, Lazzari asserted in the amended answer that Alan and Katzenberg had been engaged, since before Lazzari's purchase of Katzenberg's stock, in an extensive insurance fraud scheme, masquerading as a "risk management program," pursuant to which Alan had made material misrepresentations to the corporations' insurers. Lazzari further claimed that, unknown to the corporations,

Alan had benefitted from the fraud by intentionally overbilling the corporations for their insurance premiums and retaining the overbilled amounts for itself. As a result of its disloyalty, Lazzari claimed, Alan had forfeited any right to payment under the consulting agreement because the agreement had been fraudulently induced by Alan's misconduct and, even if the agreement had been properly entered into, it was properly terminated based upon Alan's misconduct. On this basis, Lazzari claims a right to discontinue all future payments due Alan under the consulting agreement and to recover those sums that had already been paid.

During the pendency of his motion for leave to amend, Lazzari moved for summary judgment dismissing the complaint on the ground alleged in the proposed amended answer. In a second order dated June 21, 2005, the Supreme Court, sua sponte, adjourned Lazzari's motion for summary judgment to allow Alan to address the newly-interposed affirmative defenses and counterclaims. Alan amended its complaint as of right, pursuant to CPLR 3025 (a), asserting, in addition to the claims made in its initial complaint, that the consulting agreement was not subject to a "faithless agent" defense because the compensation provided for in the agreement was, in reality, a portion of the purchase price that Lazzari had agreed to pay for Katzenberg's stock. After Lazzari served an answer to the amended complaint, which made no reference to any claims by Acme, Alan made its own motion for summary judgment dismissing the affirmative defenses and counterclaims. By order entered December 19, 2005, the Supreme Court granted Lazzari's motion for summary judgment dismissing the complaint, denied as academic that branch of Alan's separate motion which was for summary judgment dismissing the affirmative defenses, and denied that branch of Alan's separate motion which was for summary judgment dismissing the counterclaims insofar as asserted against it. The counterclaims asserted against Katzenberg personally were dismissed for lack of personal jurisdiction. Alan and Katzenberg appeal from both orders dated June 21, 2005, and Alan appeals from the order entered December 19, 2005.

Initially, the appeal from the order dated June 21, 2005, which, sua sponte, adjourned Lazzari's motion for summary judgment dismissing the complaint, must be dismissed as academic. The merits of the motion were subsequently adjudicated in the order entered on December 19, 2005, and, as a result, the rights of the parties as determined by that order can no longer

be affected by the determination of this appeal (see *Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 714 [1980]).

The other order dated June 21, 2005, which granted Lazzari's motion for leave to reargue and, upon reargument, inter alia, granted Lazzari leave to amend his answer, reaches us in a similar, although not identical, posture. The answer to the amended complaint, dated August 5, 2005, superseded the amended answer that was the subject of the order dated June 21, 2005 (see *Waterman v Marpet,* 281 App Div 896, 897 [1953]). As a result, the appeal from that order would have been rendered academic (see *Wrobleski v Wakefield Homes,* 46 AD2d 805 [1974]), but for the fact that without the initial grant of leave to amend, Lazzari would not have had the occasion to serve, as a matter of right, the answer to the amended complaint. It is that pleading which asserts the faithless agent defense at the center of the parties' competing motions for summary judgment. Thus, the appeal from the order granting leave to amend is not academic, but its significance is limited to whether leave to amend was properly granted on the basis of anything asserted in the proposed amended answer. If granting leave to amend was in any way appropriate, the amended complaint was properly served and, consequently, the faithless agent defense that is presently in issue was properly introduced into the case in the answer to the amended complaint.

In the absence of prejudice or surprise to the opposing party, leave to amend a pleading should be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit (see *Trataros Constr., Inc. v New York City Hous. Auth.,* 34 AD3d 451 [2006]; *Surgical Design Corp. v Correa,* 31 AD3d 744 [2006]; *Melendez v Bernstein,* 29 AD3d 872 [2006]). The proposed amended answer at issue here alleges, among other things, that at the time the consulting agreement was executed, Alan was defrauding the corporations in connection with the insurance brokerage services it was providing to them, and that if Lazzari had known of the fraud, he would not have retained Alan to provide consulting services in connection with the operation of the corporations, as the contract provides. Alan did not argue, in opposition to the motion, that this claim is palpably insufficient or patently devoid of merit. Since there is no claim that Alan was prejudiced or surprised by Lazzari's assertion of this claim, that branch of Lazzari's cross motion which was for leave to serve the amended answer was properly granted.

In order to prevail on his motion for summary judgment dismissing the complaint, Lazzari was required to demonstrate

his entitlement to judgment as a matter of law and, even then, Alan would defeat Lazzari's motion by raising a triable issue of fact (*see Alvarez v Prospect Hosp.,* 68 NY2d 320 [1986]; *Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851 [1985]). There is no dispute that Alan engaged in an extensive insurance fraud scheme in which, on behalf of the corporations, it routinely misstated the facts relevant to the underwriting of the corporations' insurance policies. Katzenberg has admitted that Alan did so. In response to Lazzari's further claim that, unknown to the corporations' management, Alan withheld a portion of the premium savings that resulted from the fraud, however, Alan asserts, on the basis of documentary evidence, that Lazzari and the other corporate managers were aware of and participated in the insurance fraud scheme and knew that Alan was receiving a portion of the premium savings as a fee. A principal who condones misconduct on the part of his or her agent may not rely on that misconduct to deprive the agent of compensation (*see* Restatement [Second] of Agency § 416; *McNamara v Johnston,* 522 F2d 1157, 1165-1166 [1975], *cert denied* 425 US 911 [1976]; *Squaw Mtn. Cattle Co. v Bowen,* 804 P2d 1292, 1297 [Wyo 1991]). Alan's opposition on this basis is, therefore, sufficient to raise a triable issue of fact requiring that Lazzari's motion for summary judgment dismissing the complaint be denied.

Those branches of Alan's motion which were for summary judgment dismissing Lazzari's defenses and counterclaims turn upon the extent of the forfeiture required by the faithless agent rule. In one of the earliest enunciations of the rule, the Court of Appeals, in its 1886 decision in *Murray v Beard* (102 NY 505 [1886]), held that a timber broker who sought to recover a commission for acting on behalf of the defendant in obtaining a contract to provide timber for a pier but, unknown to the defendant, had made similar arrangements with several other parties that were bidding on the same contract, could not recover because he was a "faithless agent." Although the issues of an agent's duty to a party other than his principal and the forfeiture of unrelated commissions were not presented in *Murray,* the language by which the Court of Appeals originally articulated the rule is nevertheless instructive: "An agent is held to *uberrima fides* in his dealings with his principal, and if he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment, it

amounts to such a fraud upon the principal, as to forfeit any right to compensation for services" (*id.* at 508). The faithless agent rule thus is founded upon the agent's duty of loyalty to the principal, is concerned with faithfulness in connection with "the transaction," and the conduct that implicates it constitutes "a fraud upon the principal" (*id.*).

Since *Murray*, the faithless agent rule has been litigated primarily in the context of the relationship between an employer and an employee (*see e.g. Western Elec. Co. v Brenner,* 41 NY2d 291 [1977]; *Lamdin v Broadway Surface Adv. Corp.,* 272 NY 133 [1936]; *Rodgers v Lenox Hill Hosp.,* 239 AD2d 140 [1997]; *Bon Temps Agency v Greenfield,* 184 AD2d 280 [1992]). As a result, there are few, if any, cases that address the situation presented here, in which the agent has two related principals. Nevertheless, the Court of Appeals has recognized that the rule is a part of the law of agency (*see Feiger v Iral Jewelry,* 41 NY2d 928 [1977]), and there are some basic principles of agency law that guide the resolution of the questions presented.

Agency is a personal relationship, in the sense that an agent is an agent only by virtue of the agent's consent to act on behalf of a particular party, the principal, who has also consented that the agent shall act on his or her behalf (*see* Restatement [Second] of Agency § 1). As a result, the duty of loyalty imposed upon the agent by virtue of the agency relationship is to the principal (*id.* at § 387). A corporation and its shareholder are separate legal persons (*see Kok Choy Yeen v NWE Corp.,* 37 AD3d 547 [2007]). Therefore, the agent of a corporate principal is not, merely by virtue of the agency relationship with the corporation, an agent of a shareholder of the corporate principal.

The necessary consequence of the personal nature of the relationship is that the defense afforded by the faithless agent rule inures only to the benefit of the agent's principal. "Absent the relationship between the parties, there would be no duty to be breached, no wrong, and, thus, no cause of action" (*Western Elec. Co. v Brenner, supra* at 294). While, ordinarily, this conclusion would bring a swift end to the inquiry, since there is rarely any dispute as to the identity of an agent's principal, the record here is not quite so clear.

The duties of an agent are defined by the terms of the agreement that gave rise to the agency (*see* Restatement [Second] of Agency § 376; *Fulcrum Fin. Partners v Meridian Leasing Corp.,* 230 F3d 1004, 1012-1013 [2000]). Although the consulting agreement that gave rise to the agency here was nominally be-

tween Alan and Lazzari, and not between Alan and the corporations, its expressed purpose was to provide consulting services in connection with the management of the corporations. In this regard, the agreement provides that Alan "shall make itself available to assist Lazzari regarding sales to and service of customers of each of the Companies, to develop marketing strategies, to assist with any tax audits, insurance audits, regulatory inquiries, claims of customers or suppliers, etc. and be available generally to assist Lazzari in operating the business of each of the Companies." In light of this, it cannot be determined as a matter of law that it was not the parties' intent that consulting services be provided to the corporations as well and, consequently, that Alan's alleged faithlessness was not to its principal with respect to the consulting agreement. As a result, summary judgment dismissing Lazzari's faithless agent claims on the ground that Alan had no duty to Lazzari is not appropriate.

Issues of fact also defeat Alan's argument that Lazzari's faithless agent defense and counterclaims should be dismissed to the extent that they seek forfeiture of Alan's compensation for periods other than the actual period of Alan's disloyalty. A principal is always free to terminate the agency relationship, subject to a claim for damages by the agent (see *Wilson Sullivan Co. v International Paper Makers Realty Corp.*, 307 NY 20, 24 [1954]). The disloyalty of the agent entitles the principal to avoid such claims, at least to the extent that the claims involve future compensation (see Restatement [Second] of Agency § 469). Pursuant to this principle, an agent's claim that the principal's faithless agent defense should be dismissed would ordinarily be denied insofar as it applies to future payments. Here, however, the unique facts presented, in this case Alan's assertion that the consulting agreement constituted part of the consideration given by Lazzari in connection with his purchase of Katzenberg's stock in the corporations, again intervene to preclude summary disposition even to this extent.

"In determining whether contracts are separable or entire, the primary standard is the intent manifested, viewed in the surrounding circumstances" (*Rudman v Cowles Communications*, 30 NY2d 1, 13 [1972]; see *Williams v Mobil Oil Corp.*, 83 AD2d 434, 439 [1981]). Here, the "surrounding circumstances" include the facts that the stock purchase and consulting agreements were both undisputedly executed on the same day and that the terms of the consulting agreement include Lazzari's

waiver of any defense to his obligation to make payments under the agreement on the basis of Alan's failure to provide the consulting services required of it.

In these circumstances, a triable issue of fact is presented as to whether the consulting agreement was an independent contract for consulting services or a tax-favored means of paying a portion of the consideration for the stock purchase. If the latter, any misconduct on Alan's part would be irrelevant since Katzenberg had already provided the consideration for the purchase price by transferring the stock. The argument that the consulting agreement may have been structured as it was for the purpose of avoiding or even evading taxes is not a basis for granting summary judgment. "While agreements providing for the evasion of tax payments are not per se unenforceable, the defense of illegality should be resolved at trial" (*Greenwald v LeMon,* 277 AD2d 202, 204 [2000]; *see Murray Walter, Inc. v Sarkisian Bros.,* 107 AD2d 173, 175-176 [1985]).

The issue of forfeiture of past or present compensation unrelated to the agent's faithlessness has been the subject of extensive discussion in the federal courts (*see Design Strategy, Inc. v Davis,* 469 F3d 284, 300-302 [2006]; *Phansalkar v Andersen Weinroth & Co., L.P.,* 344 F3d 184, 205 [2003]; *Sequa Corp. v GBJ Corp.,* 156 F3d 136, 146-147 [1998]; *Musico v Champion Credit Corp.,* 764 F2d 102, 113 [1985]; *Trounstine v Bauer, Pogue & Co.,* 144 F2d 379, 383 [1944], *cert denied* 323 US 777 [1944]). Applying their prediction as to how the Court of Appeals would resolve the issue (*see Travelers Ins. Co. v 633 Third Assoc.,* 14 F3d 114, 119 [1994]), the federal courts have held that a faithless servant forfeits only the compensation due with respect to the transaction in which the disloyalty occurs, provided that "(1) the parties had agreed that the agent will be paid on a task-by-task basis (*e.g.,* a commission on each sale arranged by the agent), (2) the agent engaged in no misconduct at all with respect to certain tasks, and (3) the agent's disloyalty with respect to other tasks 'neither tainted nor interfered with the completion of' the tasks as to which the agent was loyal" (*Phansalkar v Andersen Weinroth & Co., L.P., supra* at 205; *see Design Strategy, Inc. v Davis, supra; Sequa Corp. v GBJ Corp., supra; Musico v Champion Credit Corp., supra; Trounstine v Bauer, Pogue & Co., supra*).

This view is consistent with the position taken by the Restatement, which addresses the issue directly. The Restatement provides that "[a]n agent is entitled to no compensation for

conduct which is disobedient or which is a breach of his duty of loyalty" (Restatement [Second] of Agency § 469). Nevertheless, the principal is obligated to pay to the agent, despite the breach, "the agreed compensation for services properly rendered for which the compensation is apportioned in the contract, whether or not the agent's breach is wilful and deliberate" (Restatement [Second] of Agency § 456). Under the Restatement view, therefore, "the agent is entitled to retain compensation only for properly performed tasks for which compensation is specifically apportioned by contract" (*Interpool Ltd. v Patterson,* 874 F Supp 616, 621 [1995]).

No New York appellate court has discussed this issue, although our colleagues in the Appellate Division, First Department, appear to have accepted the Restatement rule (*see GRG Group v Ravenal,* 247 AD2d 201, 202 [1998]). The rule is consistent, however, with the logic of those New York courts that have addressed the issue tangentially. Since forfeiture arises upon "misconduct and disloyalty which substantially affect the contract of employment" (*Sundland v Korfund Co., Inc.,* 260 App Div 80, 81-82 [1940]) and is required only upon a "persistent pattern of disloyalty" (*Bon Temps Agency v Greenfield,* 212 AD2d 427, 428 [1995]; *see Schwartz v Leonard,* 138 AD2d 692, 693 [1988]), it follows that obligations that are unrelated to the disloyalty would not be affected by it. While there are decisions in which the rule has been articulated as requiring forfeiture by the agent of "all salary and other compensation after his first faithless act" (*Matter of Blumenthal [Kingsford],* 32 AD3d 767, 768 [2006]), these decisions have involved either an employment situation (*see St. James Plaza v Notey,* 95 AD2d 804, 806 [1983]) which, by definition, involves only a single agency relationship, or an agency that was limited to a single purpose (*see Soam Corp. v Trane Co.,* 202 AD2d 162 [1994]), not the more complex relationships that are at issue when forfeiture is sought with respect to unrelated compensation. We conclude, therefore, that the forfeiture visited upon a faithless servant is limited in the manner articulated by the Restatement and the federal courts.

Applying the rule here, triable issues of fact remain as to whether any forfeiture that may be required of Alan is limited to the compensation it received during the period in which Alan was acting disloyally. Although the compensation to which Alan is entitled under the consulting agreement is separate and distinct from the compensation it was to receive for insurance

brokerage services, and Alan is not alleged to have engaged in any misconduct in connection with the services required of it under the consulting agreement, it cannot be said, at least on this record, that the alleged fraud perpetrated upon the corporations by Alan does not "taint or interfere with" the performance of the advisory services Alan was to provide pursuant to the consulting agreement. Summary judgment limiting the damages that may be recovered under the counterclaims, as requested by Alan, was, therefore, properly denied.

Finally, Lazzari's argument that the Supreme Court erred in failing to award him summary judgment on the counterclaims is not properly before us. Lazzari did not seek such relief in his motion for summary judgment, presumably because the counterclaims had not yet been interposed at the time that motion was made. Even if he had done so, however, Lazzari did not file a notice of appeal or cross appeal and it is not necessary, in order to give meaningful relief to Alan and Katzenberg, to grant relief to Lazzari (*see Hecht v City of New York*, 60 NY2d 57, 61 [1983]; *Colonial Coop. Ins. Co. v Desert Storm Constr. Corp.*, 305 AD2d 363, 364 [2003]).

For all of the foregoing reasons, the order of the Supreme Court which granted Lazzari's motion for leave to reargue, and upon reargument, denied that branch of Alan's prior motion which was for summary judgment dismissing Lazzari's first and second affirmative defenses, and granted that branch of Lazzari's prior cross motion which was for leave to amend his answer by interposing three affirmative defenses and two counterclaims, is affirmed. The appeal from the order which, sua sponte, adjourned Lazzari's motion for summary judgment dismissing the complaint is dismissed, as no appeal lies as of right from an order that does not decide a motion made on notice (*see* CPLR 5701 [a] [2]), and leave to appeal has not been granted (*see* CPLR 5701 [c]), and, in any event, the appeal has been rendered academic. The order entered December 19, 2005, is modified, on the law, by deleting the provision thereof granting Lazzari's motion for summary judgment dismissing the complaint, and substituting therefor a provision denying that motion. As so modified, the order entered December 19, 2005, is affirmed insofar as appealed from.

CRANE, J.P., KRAUSMAN and GOLDSTEIN, JJ., concur.

Ordered that the order dated June 21, 2005, which granted the defendant's motion for leave to reargue and, upon reargument, denied that branch of the plaintiff's prior motion which

was for summary judgment dismissing the defendant's first and second affirmative defenses and granted that branch of the defendant's prior cross motion which was for leave to amend his answer by interposing three affirmative defenses and two counterclaims, is affirmed, without costs or disbursements; and it is further,

Ordered that the appeal from the order dated June 21, 2005, which, sua sponte, adjourned the defendant's motion for summary judgment dismissing the complaint, is dismissed, without costs or disbursements, as no appeal lies as of right from an order that does not decide a motion made on notice (*see* CPLR 5701 [a] [2]), and leave to appeal has not been granted (*see* CPLR 5701 [c]), and, in any event, the appeal is academic; and it is further,

Ordered that the order entered December 19, 2005, is modified, on the law, by deleting the provision thereof granting the defendant's motion for summary judgment dismissing the complaint and substituting therefor a provision denying that motion; as so modified, the order entered December 19, 2005, is affirmed insofar as appealed from, without costs or disbursements.