[851 NYS2d 238]

Grace Ruth Lucido, as Administratrix of the Estate of Thomas Lucido, Deceased, Appellant, v Mary Mancuso, Defendant, and Greenburgh Partnership No. 26 et al., Defendants and Third-Party Plaintiffs-Respondents. Delcon Construction Corporation, Third-Party Defendant-Respondent.

Second Department, February 1, 2008

**APPEARANCES OF COUNSEL**

*Sacks and Sacks, LLP*, New York City (*Scott N. Singer* of counsel), for appellant.

*Quirk and Bakalor, P.C.*, New York City (*Gloria B. Dunn* of counsel), for defendants and third-party plaintiffs-respondents.

*Ford Marrin Esposito Witmeyer & Glesser, LLP*, New York City (*Joseph D'Ambrosio* and *Andrew I. Mandelbaum* of counsel), for third-party defendant-respondent.

**OPINION OF THE COURT**

CRANE, J.P.

More than 50 years ago, this Court held that a plaintiff seeking leave to amend a complaint to add a cause of action alleging wrongful death must make a competent showing of merit. In

general, however, an application for leave to amend a pleading pursuant to CPLR 3025 (b) is governed by a substantially more permissive standard. In the absence of prejudice or surprise resulting directly from the delay in seeking leave, such applications are to be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit. We hold in this case that causes of action alleging wrongful death should not be treated differently. The standard of "palpably insufficient or patently devoid of merit" applies to motions made pursuant to CPLR 3025 (b) for leave to amend a complaint to add a cause of action for wrongful death. In so holding, we trace, and overrule, the line of authority requiring a plaintiff to make an evidentiary showing by competent medical proof that a defendant's conduct caused the decedent's death.

## I

On May 7, 1996, Thomas Lucido (hereinafter Thomas), a 35-year-old carpenter, allegedly was injured when he fell from a scaffold in the Town of Greenburgh. He commenced this action by service of a summons and complaint on or about August 25, 1998, naming as defendants the property owners and the general contractor. The complaint alleged, inter alia, that the defendants had violated Labor Law §§ 200, 240 (1) and § 241 (6). Issue was joined and, on or about July 12, 1999, Thomas's employer, Delcon Construction Corporation, was impleaded as a third-party defendant. On January 24, 2003, Thomas died. The death certificate lists, as the cause of death, "Acute Mixed Drug Intoxication (Cocaine and Heroin)."

The action was stayed until letters testamentary were issued, and Grace Lucido, as administratrix of the estate (hereinafter the plaintiff), moved to be substituted as the plaintiff, to lift the automatic stay due to Thomas's death, and to be granted leave to amend the complaint in the form annexed to the motion by, inter alia, adding a cause of action to recover damages for wrongful death. By order dated June 29, 2004, the Supreme Court (Nicolai, J.) granted the first two branches of the motion but denied the third "without prejudice to renewal within 30 days of the date of this order, upon proper proof, including a physician's affidavit which demonstrates the causal connection between the decedent's death in 2003 from an overdose of cocaine and heroin, as set forth in the death certificate, and [Thomas's] fall from the scaffold in 1996."

In support of its decision, the Supreme Court relied upon this Court's decision in *Witonski v Feirstein* (76 AD2d 920 [1980]),

in which we held, in connection with a motion for leave to amend a complaint by adding a cause of action for wrongful death, that the affirmation of a nontreating physician was sufficient to establish the causal connection between the accident and the decedent's death.

The plaintiff renewed her motion, submitting, inter alia, an affidavit and a letter from Dr. Douglas Anderson, which were based on his review of Thomas's medical records. Dr. Anderson recounted that Thomas had a history of substance abuse, but asserted that Thomas had "maintain[ed] abstinence and attend[ed] [Alcoholics Anonymous] regularly for six years prior to the 1996 accident." The injuries from the construction accident, and consequent pain, led to a relapse into substance abuse. Dr. Anderson opined that Thomas's fatal overdose "was a chronological progression of events as documented in my report and was directly and causally related and connected to the accident of May 7, 1996 and the injuries sustained therein." In the proposed amended complaint, the plaintiff alleged, inter alia, that the defendants' negligence caused the injuries that resulted in Thomas's death.

The Supreme Court denied that branch of the plaintiff's renewed motion which was for leave to amend the complaint, holding that Dr. Anderson's conclusion was speculative:

> "There is no objective support cited for his statement, other than a general statement as to his review of the medical records, that [Thomas] was in full recovery from substance abuse at the time of the accident, or for his statements that [Thomas's] use of cocaine and heroin arose as a result of unremitting pain from his injuries which could not be controlled by prescription pain medications, or from his depression caused by the accident."

In support of this holding, the Supreme Court cited our decision in *Feinberg v Walter B. Cooke, Inc.* (240 AD2d 623 [1997]). In similar procedural circumstances, we held in *Feinberg* that the medical affidavits failed to establish anything but a speculative connection between the defendant's alleged negligence and the decedent's death.

We agree with the Supreme Court that Dr. Anderson's affidavit is speculative and does not constitute competent medical proof establishing the connection between the accident and Thomas's death (*see Ortiz v Bono,* 101 AD2d 812 [1984]; *cf. Kordonsky v Andrst,* 172 AD2d 497, 498-499 [1991]). Thus, if

competent medical proof were required at this stage of the action, we would affirm the Supreme Court's denial of that branch of the plaintiff's renewed motion which was for leave to amend the complaint to add a cause of action alleging wrongful death.

## II

A motion for leave to amend a pleading under CPLR 3025 (b) and its predecessor statutes (*see* former Civ Prac Act §§ 245, 245-a, 245-b) was traditionally held to be completely separate and apart from a motion to test the legal sufficiency of a pleading (*see* CPLR 3211 [a] [7]). Thus, a court deciding a motion for leave to amend a pleading was not required to give any consideration at all to the legal sufficiency of the allegations that the movant sought to add by way of the proposed amendment. To obtain review of the sufficiency of the allegations, the opposing party was required to make a separate motion (*see e.g. Grandview Constr. Corp. v Roreck Constr. Co.*, 14 AD2d 909 [1961]; *Newman v Goldberg*, 250 App Div 431, 431-432 [1937]; *Doyle v Chatham & Phenix Natl. Bank*, 219 App Div 522, 525-526 [1927]; *Milliken v McGarrah*, 164 App Div 110, 111 [1914]). In some cases, however, a slightly less liberal standard was stated. For example, in *Amherst Bowling Ctr. v Dolce* (11 AD2d 1079 [1960]), the Fourth Department stated that it declined to review the sufficiency or merits of the amended pleading, but went on to observe that "[i]t cannot be said as a matter of law that the insufficiency of the pleading is clear on its face and free from doubt. Under these circumstances, defendant should have an opportunity to assert the defense and the plaintiff to make such motions against it as it may deem advisable" (*id.*).

Even with liberality already accorded to motions for leave to amend pleadings under the Civil Practice Act, the drafters of the Civil Practice Law and Rules believed it appropriate to provide expressly for a liberal standard. In 1957, the Advisory Committee on Practice and Procedure of the Temporary Commission on the Courts (hereinafter the Committee) issued its First Preliminary Report to the Governor and Legislature. The Committee suggested that amendments or supplements to pleadings by leave of the court or by stipulation of all of the parties be permitted at any time. The last sentence of the proposed section emphasized the liberality with which such applications should be granted: "Leave shall be freely given upon terms that may be just" (First Prelim Rep of Advisory Comm on Prac & Pro, 1957 NY Legis Doc No. 6[b], at 77). The Com-

mittee explained that the last sentence "more explicitly states the policy of liberality" (*id.* at 78). And, the Committee wrote, the proposed rules "are intended to grant the widest possible discretion to the court in granting leave to serve supplemental pleadings and imposing terms" (*id.*).

When the CPLR was enacted (*see* L 1962, ch 308), CPLR 3025 (b) contained the language of the Advisory Committee's recommendation almost verbatim:

> "Amendments and supplemental pleadings by leave. A party may amend his pleading, or supplement it by setting forth additional or subsequent transactions or occurrences, at any time by leave of court or by stipulation of all parties. Leave shall be freely given upon such terms as may be just including the granting of costs and continuances."

Nevertheless, in *East Asiatic Co. v Corash* (34 AD2d 432 [1970]), the First Department held that, in the interest of judicial economy, some scrutiny must be given a proposed amendment under CPLR 3025 (b). That this was a departure from the general rule was pointed out by Justice (as he then was) Owen McGivern in dissent: "I have always understood it to be the rule that barring surprise or prejudice, a timely application to amend a complaint will never be denied" (34 AD2d at 437).

Following *East Asiatic Co. v Corash* (34 AD2d 432 [1970]), the courts began to combine the analysis of a motion for leave to amend a pleading under CPLR 3025 (b) with the analysis of a motion to test the validity of that proposed amended pleading under CPLR 3211 (a) (7). Thus, the opponent of a motion for leave to amend a pleading was considered to have made, in effect, a cross motion to test the legal sufficiency of the proposed amendment. Under this approach, the court was supposed to review the legal sufficiency of the proposed amendment at the time that the motion for leave to amend itself was being decided. The rule was that a motion for leave to amend would be denied "in cases where the proposed amendment is palpably insufficient as a matter of law or is totally devoid of merit" (*Norman v Ferrara*, 107 AD2d 739, 740 [1985]). This means that, in the case, for example, of a motion for leave to amend a complaint by adding a new cause of action, the motion for leave to amend will be denied, in the absence of prejudice or surprise, only if the new cause of action would not withstand a motion to dismiss under CPLR 3211 (a) (7).

In *Island Cycle Sales v Khlopin* (126 AD2d 516 [1987]), the decedent had been killed in a motorcycle accident. His estate brought an action against the plaintiff, a seller of motorcycles and motorcycle equipment, for breach of warranty, relating to the allegedly defective helmet the plaintiff had sold to the decedent. The plaintiff had a garage liability policy, but the defendant, its insurance broker, allegedly had failed to renew it or obtain other insurance coverage. The expired policy contained a liability limit of $100,000. The plaintiff commenced an action against the defendant for negligence in allowing the policy to expire and in not obtaining other insurance coverage. At some point, the plaintiff sought leave to serve an amended complaint with an ad damnum clause in the amount of $20,100,000, on the ground that the plaintiff might be found to be liable to the decedent's estate in that amount. The Supreme Court granted the motion for leave to amend, but we reversed. Observing that under New York law, a broker who fails to obtain insurance would be liable only up to the amount of what the policy would have covered, the defendant's liability would have been limited to the $100,000 of the policy it had allowed to lapse. Thus, the $20,100,000 ad damnum clause in the proposed amended complaint was far beyond the amount the plaintiff actually would be allowed to recover against the defendant. Consequently, citing *Norman v Ferrara* (107 AD2d 739 [1985]), we held that the lack of merit of the proposed amended complaint was clear and free from doubt (*see Island Cycle Sales v Khlopin*, 126 AD2d at 517-518).

Similarly, where the lack of merit of a proposed defense is clear and free from doubt, a motion for leave to amend an answer to raise that defense should be denied. In *Norman v Ferrara*, the defendant admitted in his initial answer that he owned the vehicle that allegedly was at fault in an accident. Later, he sought leave to amend his answer to deny that he was the owner of the car, although he admitted that the registration was in his name. The Supreme Court granted the defendant leave to amend, but we reversed. We noted that under New York law, the person in whose name a vehicle is registered is estopped from denying ownership. Consequently, the defendant's proposed amended answer, in which he denied ownership, was "palpably insufficient as a matter of law" (107 AD2d at 740; *cf. Fisher v Carter Indus.*, 127 AD2d 817 [1987]).

We adhere to the rule applied in *Norman v Ferrara* (107 AD2d at 740) as an accurate reflection of the Legislature's express

policy that motions for leave to amend pleadings should be freely granted (*see G.K. Alan Assoc., Inc. v Lazzari*, 44 AD3d 95, 99 [2007] ["(i)n the absence of prejudice or surprise to the opposing party, leave to amend a pleading should be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit"]; *Trataros Constr., Inc. v New York City Hous. Auth.*, 34 AD3d 451, 452-453 [2006]). Additionally, "[t]he legal sufficiency or merits of a proposed amendment to a pleading will not be examined unless the insufficiency or lack of merit is clear and free from doubt" (*Sample v Levada*, 8 AD3d 465, 467-468 [2004]; *see Sleepy's, Inc. v Orzechowski*, 7 AD3d 511 [2004]; *Zacma Cleaners Corp. v Gimbel*, 149 AD2d 585, 586 [1989]). These cases make clear that a plaintiff seeking leave to amend the complaint is not required to establish the merit of the proposed amendment in the first instance.

### III

Somewhere along the line, the economical approach advanced in *East Asiatic Co. v Corash* (34 AD2d 432 [1970]), morphed into a rule, applied in some cases, that, from the standpoint of the party seeking the amendment, is significantly more exacting. Several recent cases state that the party seeking leave to amend must make "some evidentiary showing" of merit (*Butt v New York Med. Coll.*, 7 AD3d 744, 745 [2004]; *see Buckholz v Maple Garden Apts., LLC*, 38 AD3d 584, 585 [2007]; *Emilio v Robison Oil Corp.*, 28 AD3d 417, 418 [2006]; *Toscano v Toscano*, 302 AD2d 453, 453 [2003]; *Morgan v Prospect Park Assoc. Holdings*, 251 AD2d 306 [1998]).

The courts that express the rule in these terms apparently require that a party seeking leave to amend a pleading make a showing that would not only be sufficient to withstand a motion to dismiss based on legal insufficiency (*see* CPLR 3211 [a] [7]), but would also be sufficient to withstand a motion for summary judgment (*see* CPLR 3212). The first tests whether a cause of action has been stated. The second tests whether a cause of action exists in fact. The courts applying this more stringent rule of "some evidentiary showing," in effect, deem the opponent of a motion for leave to amend not only to have made a cross motion to dismiss for legal insufficiency, but also to have made a cross motion for summary judgment. In fact, the courts that apply this rule seem to be implicitly treating the opponent of a motion for leave to amend as not only having made a motion for summary judgment, but also as having made a prima facie dem-

onstration of entitlement to judgment as a matter of law with respect to the proposed amended cause of action or defense, so that the burden shifts to the proponent of the amendment to make an "evidentiary showing" of merit.

The origin of this "evidentiary showing" rule can be traced to a statement contained in *Cushman & Wakefield v John David, Inc.* (25 AD2d 133 [1966]). In *Cushman & Wakefield,* a First Department decision, the defendant already had made a motion to dismiss parts of the plaintiff's complaint based on the legal insufficiency of the allegations (*see* CPLR 3211 [a] [7]). The plaintiff responded by requesting leave to replead. This procedural context implicated CPLR 3211 (e), which stated,* in part:

> "Where a motion [to dismiss the complaint or a defense] is made [under CPLR 3211 (a) (7) or (b)] . . . if the opposing party desires leave to plead again in the event the motion is granted, he shall so state in his opposing papers and may set forth evidence that could properly be considered on a motion for summary judgment in support of a new pleading; *leave to plead again shall not be granted unless the court is satisfied that the opposing party has good ground to support his cause of action or defense; the court may require the party seeking leave to plead again to submit evidence* to justify the granting of such leave" (emphasis added).

CPLR 3211 (e) was, by its terms, applicable only to situations in which the party opposing the "amendment" had already made a motion to dismiss under CPLR 3211 (a) (7), and where the party seeking the "amendment" was seeking leave to "plead again" in response to such a motion to dismiss. It had no application in a case where a plaintiff sought leave to amend (*see* CPLR 3025 [b]) without there ever having been a motion by the defendant to dismiss the complaint based on legal insufficiency.

In cases following *Cushman & Wakefield,* including some from our Court (*see e.g. Joyce v McKenna Assoc.,* 2 AD3d 592, 594

---

* The entire provision for repleading was deleted by Laws 2005 (ch 616), in recognition that *Rovello v Orofino Realty Co.* (40 NY2d 633 [1976]) had nullified the need for sustaining proof on a CPLR 3211 (a) (7) motion (*see* Siegel, NY Prac § 275, at 457 [4th ed], 2007 Pocket Part, at 24; 170 Siegel's Practice Review, *Amendment Lets Party Moved Against Under CPLR 3211 Await Court's Treatment as Summary Judgment Before Gathering Up Effective Opposition Proof,* at 1 [Feb. 2006]).

[2003]; *Morgan v Prospect Park Assoc. Holdings*, 251 AD2d 306 [1998]; *Virelli v Goodson-Todman Enters.*, 159 AD2d 23, 24-25 [1990]; *Martin v County of Madison*, 88 AD2d 162, 165-166 [1982]; *Harry Levine Corp. v Gimbel Accessories*, 41 AD2d 637, 637-638 [1973]), the courts applied the "evidentiary showing" standard in reviewing what were in fact requests for leave to re-plead pursuant to CPLR 3211 (e). Some of those cases, however, referred to the relief that was being sought by the plaintiff as being both leave to "replead," and as being leave to "amend." The use of this language eventually led to a blending of the standard then to be applied under CPLR 3025 (b), in reviewing motions for leave to amend, with the more exacting standard to be applied under CPLR 3211 (e) in reviewing applications for leave to replead in opposition to a motion to dismiss. The elimination from CPLR 3211 (e) of the leave to replead provisions, saps these cases of their vitality, both as applied to CPLR 3211 (e) and as applied to motions for leave to amend a pleading under CPLR 3025 (b).

As early as *Alexander v Seligman* (131 AD2d 528 [1987]), this Court was mentioning the absence of an affidavit of merit as a factor to be considered in support of denying a motion pursuant to CPLR 3025 (b) for leave to amend a complaint, at least where the motion was made at the commencement of trial. This Court eventually applied the "evidentiary showing" standard to motions for leave to amend made under CPLR 3025 (b), even where the motion was not particularly untimely. This standard has, as noted above, sporadically been repeated ever since (*see e.g. Joyce v McKenna Assoc.*, 2 AD3d at 594; *Morgan v Prospect Park Assoc. Holdings*, 251 AD2d 306 [1998]).

■ Cases involving CPLR 3025 (b) that place a burden on the pleader to establish the merit of the proposed amendment erroneously state the applicable standard and are no longer to be followed. No evidentiary showing of merit is required under CPLR 3025 (b). The court need only determine whether the proposed amendment is "palpably insufficient" to state a cause of action or defense, or is patently devoid of merit. Where the proposed amended pleading is palpably insufficient or patently devoid of merit, or where the delay in seeking the amendment would cause prejudice or surprise, the motion for leave to amend should be denied. If the opposing party wishes to test the merits of the proposed added cause of action or defense, that party may later move for summary judgment upon a proper showing (*see* CPLR 3212).

## IV

In the absence of a requirement of an evidentiary showing of merit in support of a motion for leave to amend a pleading under CPLR 3025 (b), it is difficult to see why a species of evidentiary showing of merit—competent medical proof—is required when the motion is to add a cause of action alleging wrongful death. Our decision in *Feinberg v Walter B. Cooke, Inc.* (240 AD2d 623 [1997]), upon which the Supreme Court relied, cited a line of authority dating back to *Bedarf v Rosenbaum* (286 App Div 1103 [1955]). In *Bedarf,* we first required a competent showing of merit as a prerequisite for leave to amend a complaint to add a cause of action alleging wrongful death: "In our opinion some competent showing that the proposed cause of action has merit should have been made. . . . In the absence of such evidence, the granting of leave to add the cause of action for alleged wrongful death was an improvident exercise of discretion" (*id.* at 1103). We stated no reason for this requirement, but merely asserted it. And, we relied on no authority. An earlier First Department case, *Apicella v Merolla's Mkt., Inc.* (283 App Div 1056 [1954]), which was not cited in *Bedarf,* had applied the same rule but also did not state any reasoning or rely on any authority. Since then, the requirement has become entrenched in our precedents (and those of the other Departments of the Appellate Division): "A motion seeking leave to amend a personal injury complaint to assert a cause of action for wrongful death must be supported by competent medical proof of the causal connection between the alleged negligence and the death of the original plaintiff" (*Shapiro v Beer*, 121 AD2d 528, 528 [1986]; *see Paolano v Southside Hosp.*, 3 AD3d 524, 525 [2004]; *Griffin v New York City Tr. Auth.*, 1 AD3d 141 [2003]; *Collura v Good*, 243 AD2d 441 [1997]; *Dembo v Health Ins. Plan of Am.*, 239 AD2d 382, 383 [1997]; *Ludwig v Horton Mem. Hosp.*, 189 AD2d 986, 986-987 [1993]; *Nowak v Sherman*, 167 AD2d 843, 844 [1990]; *Sweeney v Henry F. Gardstein, Jr., M.D., P.C.*, 160 AD2d 1002 [1990]; *McGuire v Small*, 129 AD2d 429 [1987]; *McCarthy v Downes*, 17 AD2d 919 [1962]). No case since *Bedarf* has supplied, or attempted to supply, a rationale for the rule, much less a contemporary one. Nonetheless, it has persisted, until now.

Prior to *Bedarf,* only two rationales had been advanced for the rule, and neither can justify persistence of the rule today. First, in *Pearlstein v Priest* (132 NYS2d 541 [1954]), the

Supreme Court, Bronx County, expressed doubt as to the underlying merit of the plaintiff's proposed cause of action for wrongful death, given the four-year lapse between the accident, which required "only" six days of hospitalization, and the original plaintiff's death (*id.* at 542). We find that the general rule applicable to motions for leave to amend pleadings under CPLR 3025 (b) and the availability of summary judgment (*see* CPLR 3212) amply address this concern.

Second, in *La Placa v B.L. & C. Corp.* (130 NYS2d 504 [1952]), the Supreme Court, Kings County, noted that the addition of a wrongful death cause of action to the personal injury action would shift the burden of proving contributory negligence in the personal injury action to the defendant (*see also Doragia v Lauri*, 130 NYS2d 835 [1951]). At that point, the plaintiff bore the burden of establishing the absence of contributory negligence in a personal injury action, but the defendant bore the burden of establishing the presence of contributory negligence in a wrongful death cause of action (*see Rossman v La Grega*, 28 NY2d 300, 303-304 [1971]). By statute, however, when a personal injury action was joined with an action alleging wrongful death, the defendant bore the burden of proving contributory negligence with respect to both (*see* Decedent Estate Law § 119; *cf.* EPTL 11-3.2 [b]). Thus, the Supreme Court, in *La Placa*, was concerned not merely with the addition of the wrongful death cause of action, but with its effect, if added, on the procedural burdens in the personal injury cause of action. The court nevertheless noted that the plaintiff was free to bring an independent action for wrongful death. In 1975, however, New York changed its standard from contributory to comparative negligence in both personal injury and wrongful death actions (*see* CPLR 1411; L 1975, ch 69). Moreover, CPLR 1412 places the burden of pleading and proving comparative negligence on the party asserting the defense (*see* CPLR 1412). Accordingly, the concern expressed by the court in *La Placa* is no longer applicable.

## V

■ ■ As our review of the history of motions for leave to amend pleadings has shown, the rule adopted in *Bedarf v Rosenbaum* (286 App Div 1103 [1955]) was anomalous even when it was adopted. Our examination of the wrongful death exception to the general standard applicable to motions for

leave to amend pleadings under CPLR 3025 (b) convinces us that there is no reason wrongful death causes of action should be treated differently from any other motion for leave to amend a pleading under CPLR 3025 (b), as we have implicitly recognized in at least one recent case (*see Hines v City of New York*, 43 AD3d 869, 871 [2007]). Consequently, *Bedarf v Rosenbaum* (286 App Div 1103 [1955]) and its progeny are overruled.

## VI

■ In the proposed amended complaint, the plaintiff sufficiently alleged that the defendants' negligence caused Thomas to suffer injuries that ultimately resulted in his death. The proposed amended complaint is neither palpably insufficient nor patently devoid of merit (*see G.K. Alan Assoc., Inc. v Lazzari*, 44 AD3d at 99). Nor did the defendants establish that the plaintiff delayed in seeking leave to amend the complaint, such that they were surprised or prejudiced. Consequently, the plaintiff's motion for leave to amend the complaint, inter alia, to add a cause of action alleging wrongful death should have been granted.

We of course express no opinion as to the ultimate merit of the plaintiff's cause of action alleging wrongful death (*see Douglas v New York City Tr. Auth.*, 91 AD2d 1057, 1058 [1983]; *cf. Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 38 AD3d 34, 38 [2006]).

The defendants' remaining contention, raised for the first time on appeal, is not properly before us (*see Wolff v New York City Tr. Auth.*, 21 AD3d 956, 957 [2005]; *DeLeon v New York City Tr. Auth.*, 5 AD3d 531, 532-533 [2004]).

Accordingly, the order is reversed insofar as appealed from, on the law and in the exercise of discretion, with one bill of costs payable to the appellant by the respondents appearing separately and filing separate briefs, that branch of the renewed motion which was for leave to amend the complaint, inter alia, to add a cause of action seeking damages for wrongful death is granted, and the proposed amended complaint is deemed served.

FISHER, RITTER, COVELLO and DICKERSON, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law and in the exercise of discretion, with one bill of costs payable to the appellant by the respondents appearing separately and filing separate briefs, that branch of the

renewed motion which was for leave to amend the complaint, inter alia, to add a cause of action seeking damages for wrongful death is granted, and the proposed amended complaint is deemed served.