■ G.K. ALAN ASSOC. INC., Appellant, v DERVAL LAZZARI, Respondent, et al., Defendant. [887 NYS2d 233]—

In an action to recover damages for breach of contract, the plaintiff appeals from (1) a decision of the Supreme Court, Nassau County (Brandveen, J.), dated July 2, 2008, and (2) a judgment of the same court entered September 23, 2008, which, after a nonjury trial, and upon the decision, is in favor of the defendant and against it, dismissing the complaint and awarding the defendant the principal sum of $350,000 on his counterclaims to recover payments he made to the plaintiff under a certain consulting agreement.

Ordered that the appeal from the decision is dismissed, as no appeal lies from a decision (*see Schicchi v J.A. Green Constr. Corp.*, 100 AD2d 509 [1984]); and it is further,

Ordered that the judgment is modified, on the law, by deleting the provision thereof awarding the defendant the principal sum of $350,000 on his counterclaims to recover payments he made to the plaintiff under a certain consulting agreement and substituting therefor a provision dismissing those counterclaims; as so modified, the judgment is affirmed; and it is further,

Ordered that one bill of costs is awarded to the defendant.

In March 2001 the defendant Derval Lazzari entered into an agreement (hereinafter the stock purchase agreement) with Harvey Katzenberg in which Lazzari agreed to purchase stock owned by Katzenberg in four related corporations (hereinafter collectively the Corporations). On the same date, Lazzari, in his personal capacity, entered into a consulting agreement with the plaintiff G.K. Alan Assoc., Inc. (hereinafter Alan), a corporation owned by Katzenberg and his wife. Under the terms of the consulting agreement, Alan agreed to provide consulting services "for the benefit and protection of businesses" in which Lazzari had purchased stock from Katzenberg, and Lazzari agreed, among other things, to make monthly payments to Alan in the amount of $25,000 over a term of 15 years.

Both before and after Lazzari purchased Katzenberg's stock, Alan provided insurance brokerage services to the Corporations and was responsible for placing their automobile and workers' compensation insurance. It is undisputed that, in connection with its insurance brokerage services, Alan engaged in an insurance fraud scheme by making material misrepresentations to the Corporations' insurers in order to lower the underwriter's insurance ratings. Additionally, it is undisputed that Alan intentionally overbilled the Corporations for their insurance premiums and retained the overbilled amounts for itself.

In 2003, after Lazzari allegedly discovered that Alan had engaged in misconduct in connection with its insurance brokerage services, he stopped making payments to Alan under the consulting agreement. Shortly thereafter, Alan commenced this action to recover damages for Lazzari's breach of the consulting agreement. In its amended complaint, Alan alleged that the stock purchase agreement and the consulting agreement represented a single integrated transaction for the sale of Katzenberg's stock in the Corporations to Lazzari and that the payments to which Alan was entitled under the consulting agreement constituted a portion of the consideration which Lazzari had agreed to pay for Katzenberg's stock. Thus, according to Alan, by failing to make payments under the consulting agreement, Lazzari breached his obligation to pay for the stock he purchased from Katzenberg. In his amended answer, Lazzari denied that the stock purchase agreement and the consulting agreement represented an integrated transaction and alleged, in support of his affirmative defenses, that Alan's misconduct in providing insurance brokerage services entitled Lazzari to avoid his obligations to pay Alan pursuant to the consulting agreement. Additionally, Lazzari interposed counterclaims seeking, among other things, recovery of the money he had paid to Alan under the consulting agreement.

On a prior appeal, this Court concluded that neither the complaint nor Lazzari's affirmative defenses and counterclaims could be dismissed on summary judgment (see G.K. Alan Assoc., Inc. v Lazzari, 44 AD3d 95 [2007], affd 10 NY3d 941 [2008]). Following a nonjury trial, the Supreme Court entered a judgment against Alan and in favor of Lazzari dismissing the complaint and awarding Lazzari the principal sum of $350,000 on his counterclaims to recover the payments he made to Alan under the consulting agreement. We modify the judgment so as to dismiss those counterclaims.

"Where, as here, a nonjury trial is involved, this Court's power to review the evidence is as broad as that of the trial court, bearing in mind that due regard must be given to the trial court, which was in a position to assess the evidence and the credibility of the witnesses" (Totonelly v Enos, 49 AD3d 710, 711 [2008]).

Alan contends that the Supreme Court incorrectly found that the consulting agreement was an independent contract for consulting services rather than simply a means for Lazzari to pay a portion of the purchase price for Katzenberg's stock. If it were the latter, then any misconduct on Alan's part would be irrelevant since Katzenberg had already provided the consider-

ation for the purchase price by transferring the stock (see *G.K. Alan Assoc., Inc. v Lazzari*, 44 AD3d at 103). "In determining whether contracts are separable or entire, the primary standard is the intent manifested, viewed in the surrounding circumstances" (*Rudman v Cowles Communications*, 30 NY2d 1, 13 [1972]; see *Williams v Mobil Oil Corp.*, 83 AD2d 434, 439 [1981]). Here, the Supreme Court was presented with conflicting evidence as to the intent of Katzenberg and Lazzari at the time the stock purchase agreement and the consulting agreement were executed. Taking into account that the Supreme Court had the advantage of viewing the witnesses (see *Matter of Fasano v State of New York*, 113 AD2d 885, 888 [1985]), we decline to disturb its finding that the consulting agreement was an independent contract for consulting services.

Additionally, we uphold the Supreme Court's determination that the consulting agreement gave rise to an agency relationship between Alan and the Corporations, as well as between Alan and Lazzari. Lazzari's affirmative defenses and counterclaims relied largely upon his contention that Alan had forfeited its right to compensation under the consulting agreement by acting, in effect, as a faithless agent in connection with its insurance brokerage services. The disloyalty of an agent entitles its principal to avoid the agent's claims for damages arising from the principal's termination of the agency relationship, at least to the extent such claims involve future compensation (see *G.K. Alan Assoc., Inc. v Lazzari*, 44 AD3d at 102). However, the defense afforded by the faithless agent rule inures only to the benefit of the agent's principal (*id.* at 101), and Alan's misconduct in connection with its insurance brokerage services for the Corporations was not directed towards Lazzari personally. Therefore, Lazzari would not be able to avoid his future obligations under the consulting agreement on the basis of Alan's disloyalty towards the Corporations unless that agreement also gave rise to an agency relationship between Alan and the Corporations.

"[Agency] is a fiduciary relationship which results from the manifestation of consent of one person to allow another to act on his or her behalf and subject to his or her control, and consent by the other so to act" (*Maurillo v Park Slope U-Haul*, 194 AD2d 142, 146 [1993]). "The duties of an agent are defined by the terms of the agreement that gave rise to the agency" (*G.K. Alan Assoc., Inc. v Lazzari*, 44 AD3d at 101). Here, although the consulting agreement was nominally between Alan and Lazzari, its expressed purpose was to engage Alan for the benefit and protection of the Corporations, and, under its terms,

Alan agreed to advance the business and interests of each of the Corporations "subject to the direction of the respective Board of Directors" of each of the Corporations. Moreover, Lazzari testified at trial that some portion of the consideration which Alan had received under the consulting agreement had been paid by the Corporations, rather than by Lazzari personally, and he proffered documentary evidence in support of this testimony. Based on the foregoing, we decline to disturb the Supreme Court's determination that the consulting agreement gave rise to an agency relationship between Alan and the Corporations.

As Alan contends, "[a] principal who condones misconduct on the part of his or her agent may not rely on that misconduct to deprive the agent of compensation" (*G.K. Alan Assoc., Inc. v Lazzari*, 44 AD3d at 100). The trial record contains conflicting evidence as to whether Lazzari and the other corporate managers were aware of and participated in Alan's practice of making material misrepresentations to the Corporations' insurers. However, at trial, Lazzari represented that he had terminated the consulting arrangement based upon Alan's overbilling practices, rather than its underlying insurance fraud scheme, and it was uncontroverted that neither Lazzari nor the other corporate managers knew that Alan was overbilling the Corporations for insurance premiums and retaining the overbilled amounts. Notably, Katzenberg testified that he never discussed Alan's overbilling practices with either Lazzari or the other main partner in the Corporations and that the insurance bills Alan issued to the Corporations had not itemized the difference between Alan's charge for insurance premiums and the actual cost of the premiums. In light of the foregoing, we uphold the Supreme Court's determination that Lazzari was entitled to avoid his future obligations under the consulting agreement based upon Alan's misconduct of overbilling the Corporations for insurance premiums.

Contrary to the Supreme Court's determination, Lazzari was not entitled to an award of $350,000 on his counterclaims to recover payments he made to Alan under the consulting agreement. At trial, Lazzari failed to establish that Alan's misconduct with respect to its insurance brokerage services had tainted or interfered with its performance of the advisory services it provided under the consulting agreement (*see G.K. Alan Assoc., Inc. v Lazzari*, 44 AD3d at 103-105).

Alan's remaining contentions are without merit. Mastro, J.P., Santucci, Chambers and Lott, JJ., concur. [*See* 20 Misc 3d 1120(A), 2008 NY Slip Op 51486(U).]