[961 NYS2d 542]

Faith Assembly, Also Known as Faith Assembly Church, Respondent, v Titledge of New York Abstract, LLC, et al., Defendants, and Stewart Title Insurance Company, Appellant.

Second Department, March 27, 2013

**APPEARANCES OF COUNSEL**

*DelBello Donnellan Weingarten Wise & Wiederkehr, LLP*, White Plains (*Daniel G. Walsh* of counsel), for appellant.

*Lasky & Steinberg, P.C.*, Garden City (*Scott L. Steinberg* of counsel), for respondent.

**OPINION OF THE COURT**

DICKERSON, J.

## Introduction

The plaintiff religious corporation operates the Faith Assembly Church in Richmond Hill, Queens. In June 2006, the

plaintiff borrowed $2.2 million from CMAC, LP, in part to perform renovations to the church and open a day care center. The loan was secured by a mortgage on the church premises. At closing on June 27, 2006, the plaintiff and CMAC, LP executed an escrow agreement with the defendant Titledge of New York Abstract, LLC (hereinafter Titledge). Under the terms of the escrow agreement, approximately $640,000 of the loan proceeds was to be deposited in escrow with Titledge, and sums from these proceeds were to be periodically released to the plaintiff to reimburse it, inter alia, for the cost of certain interior work and establishing the day care center. The escrow agreement expressly recited that it was made between the plaintiff, CMAC, LP, and "Titledge, an authorized agent" for the defendant Stewart Title Insurance Company (hereinafter Stewart).

More than three years later, in October 2009, the plaintiff commenced this action against several parties, including Titledge and Stewart, alleging that Titledge's principal, Jonathan Boxman, had misappropriated more than $400,000 of the loan proceeds which had been deposited into escrow. The plaintiff asserted five causes of action seeking to hold Stewart liable on the theory that Titledge had entered into the escrow agreement as Stewart's agent, and that Stewart was thus responsible for the alleged misconduct of Titledge and Boxman. The plaintiff also asserted a sixth cause of action against Stewart alleging that it owed the plaintiff a fiduciary duty which it had breached by failing to advise the plaintiff that Boxman had misappropriated escrow funds. Stewart moved to dismiss the complaint insofar as asserted against it pursuant to CPLR 3211 (a) (1) and (7), relying primarily on its underwriting agreement with Titledge to argue that Titledge did not have authority to enter into the escrow agreement as its agent. The Supreme Court denied Stewart's motion in its entirety, and thereafter adhered to that determination upon reargument.

For the reasons which follow, we reject Stewart's argument that the language of its underwriting agreement with Titledge conclusively establishes, as a matter of law, that Titledge lacked the authority to enter into the escrow agreement as its agent. Accordingly, upon reargument, the Supreme Court properly denied those branches of Stewart's motion which were to dismiss the causes of action premised on an agency theory pursuant to CPLR 3211 (a) (1). However, upon reargument, the Supreme Court should have granted that branch of Stewart's motion which was to dismiss the cause of action premised on breach of fiduciary duty because that claim was not asserted

with sufficient particularity to satisfy the pleading requirements of CPLR 3016 (b).

### Factual and Procedural Background

The plaintiff, Faith Assembly, also known as Faith Assembly Church, is a religious corporation which operates a church in Richmond Hill, Queens. On June 27, 2006, the plaintiff borrowed $2.2 million from CMAC, LP. At the loan closing on that date, the plaintiff and CMAC, LP executed an escrow agreement with Titledge. Under the terms of the escrow agreement, approximately $640,000 of the loan proceeds was to be deposited in escrow with Titledge, and sums from these proceeds were to be periodically released to the plaintiff to reimburse it, inter alia, as expenses were incurred for interior renovation work and establishing a day care center. The escrow agreement described Titledge as "an authorized agent" for Stewart, and the plaintiff alleges that Titledge indeed entered into that agreement as Stewart's agent.

By July 31, 2008, after certain valid draws were made from the escrow funds, the balance in the escrow account was $451,443.85. Beginning on or about December 4, 2008, several demands were made to Titledge directing the release of the escrow funds to the plaintiff. However, the funds were not remitted to the plaintiff. The plaintiff claims that, following an investigation, it learned that a number of unauthorized transfers of the escrow funds had occurred, and that, as of December 4, 2008, only $15,087.37 remained in the escrow account. The plaintiff never approved of any reduction in the balance of the escrow funds below $451,443.85. The funds in the escrow account were allegedly misappropriated by Jonathan Boxman, a controlling member, principal, and officer of Titledge. According to the plaintiff, on October 29, 2009, an indictment was filed against Boxman in the United States District Court, Eastern District of New York, in connection with his misappropriation of escrow funds.

By summons and complaint filed in the Queens County Supreme Court on October 23, 2009, the plaintiff commenced this action against, among others, Stewart, Titledge, Boxman, and CMAC, LP. The complaint alleged that, at all relevant times, Titledge acted as agent for Stewart. The complaint further alleged that Stewart knew or should have known that Titledge was holding itself out as an agent for Stewart. The complaint alleged, upon information and belief, that Stewart and Titledge

had executed an agreement which permitted Titledge to act as agent for Stewart. In addition, Titledge allegedly had executed the escrow agreement with the plaintiff as "an authorized agent for STEWART." Thus, the complaint alleged that, in connection with the escrow agreement, Titledge was acting as an authorized agent for Stewart.

According to the plaintiff, pursuant to the terms of the escrow agreement, $640,693.50 from the proceeds of the loan was deposited with Titledge as escrowee. Valid draws against the escrow funds were made following the initial deposit. As of July 31, 2008, the balance of the escrow funds was $451,443.85.

On or about December 4, 2008, the defendant CN CMAC, LLC, successor to CMAC, LP, and the plaintiff agreed that there was no further need to maintain the escrow account and that the escrow funds should be released to the plaintiff. On or about December 4, 2008, the defendant Church Mortgage Acceptance Co., LLC (hereinafter Church, LLC), on behalf of CMAC, LP, issued a letter to Titledge, to the attention of the defendant Jonathan Boxman, directing the release of the escrow funds to the plaintiff in the amount of $451,443.85, plus interest accruing since July 31, 2008. The funds were not remitted to the plaintiff.

On or about December 30, 2008, Church, LLC, again acting on behalf of CMAC, LP, issued a letter to Stewart directing the release of the escrow funds to the plaintiff. Again, the funds were not remitted to the plaintiff.

As of December 4, 2008, the balance in the escrow account had been depleted to $15,087.37. Notwithstanding the plaintiff's demands, the escrow funds totaling $451,443.85, plus interest accruing since July 31, 2008, were not returned to the plaintiff. Upon investigation, the plaintiff learned that, after July 31, 2008, a number of unauthorized transfers of the escrow funds had occurred. The plaintiff specified that it never authorized any transfers which would have depleted the escrow funds below $451,443.85.

The complaint set forth a total of 33 causes of action. This appeal involves the six causes of action that were asserted against Stewart.

In the 2nd cause of action, the plaintiff asserted that Titledge held itself out as Stewart's agent, and that Stewart knew Titledge was holding itself out as agent for Stewart to members of the public, including the plaintiff. The plaintiff further alleged

that, as a result of the representation that Titledge was acting as agent for Stewart, at all relevant times, the plaintiff conducted business with Titledge with the understanding that Titledge was an agent for Stewart. Further, the plaintiff alleged that Titledge was, in fact, an agent for Stewart. Accordingly, the plaintiff asserted that Stewart was liable to the plaintiff for sums owed to the plaintiff by Titledge.

In the 5th cause of action, the plaintiff alleged that Titledge, Stewart's agent, breached the escrow agreement with the plaintiff. The plaintiff asserted that Stewart was liable to the plaintiff for Titledge's breach of the escrow agreement.

In the 11th cause of action, the plaintiff alleged that Stewart was liable to the plaintiff for acts of fraud perpetrated by its agent, Titledge, and by Titledge's principal, Boxman.

In the 14th cause of action, the plaintiff asserted that Stewart was liable to the plaintiff for the conversion of the escrow funds by Titledge, its agent.

In the 17th cause of action, the plaintiff asserted that Stewart had a duty to it in connection with the acts performed by Titledge and Boxman, and that Stewart breached that duty. Accordingly, the plaintiff asserted that Stewart was liable to it for Titledge's negligence and gross negligence.

In the 25th cause of action, the plaintiff asserted that, after the establishment of the escrow account but prior to July 31, 2008, Stewart terminated its agreement with Titledge. The plaintiff alleged, upon information and belief, that Stewart terminated its agreement with Titledge due to its belief that Titledge and Boxman had mishandled escrow funds entrusted to them. Again upon information and belief, the plaintiff alleged that, on or about September 23, 2008, Boxman admitted to Stewart that he had misappropriated escrow funds and that escrow funds entrusted to Titledge had been misappropriated. Stewart failed to advise the plaintiff that Titledge, Stewart's agent, had misappropriated escrow funds. The plaintiff alleged that Stewart had a fiduciary duty to advise the plaintiff, among others, that Boxman and Titledge had misappropriated escrow funds, and that, by failing to do so, Stewart breached its fiduciary duty.

Stewart's Motion to Dismiss

By notice of motion dated December 15, 2009, Stewart moved to dismiss the complaint insofar as asserted against it pursuant to CPLR 3211 (a) (1) and (7).

In support of its motion, Stewart argued that Titledge had acted outside the scope of any actual authority it had to act on Stewart's behalf. Stewart asserted that Titledge's authority was limited to issuing policies of title insurance and collecting policy premiums on Stewart's behalf. Stewart also asserted that the plaintiff could not establish that Titledge acted with apparent authority. Stewart asserted that the 25th cause of action based on breach of fiduciary duty must be dismissed because the complaint failed to set forth the facts giving rise to the alleged fiduciary duty, and the misconduct complained of, with sufficient particularity as required by CPLR 3016 (b).

In support of its motion, Stewart submitted a copy of the underwriting agreement between it and Titledge executed on April 12, 2005. In paragraph 1 of the underwriting agreement, Stewart appointed Titledge to issue title assurances for Stewart in New York State.

Paragraph 3 of the underwriting agreement granted Titledge the authority, on behalf of Stewart,

> "to sign, countersign and issue [Stewart's] title assurances on forms supplied and/or approved by [Stewart], subject to the terms, conditions and provisions hereof, and only concerning real property located in the State of New York . . . [Titledge] shall not be deemed and this Agreement shall not be construed to authorize [Titledge] to perform any act for [Stewart] not expressly authorized herein."

Paragraph 4 provided, in part,

> "Acts of [Titledge]. [Titledge] shall: . . . J. segregate and safely keep in a separately designated trust account all moneys entrusted to [Titledge] by [Stewart] and others, including, but not limited to, fiduciary funds, indemnity deposits and [Stewart's] portion of all funds due [Stewart]. Said funds shall be used for no other purpose than for which entrusted to [Titledge]. With respect to said funds, [Titledge] shall perform and carry out all instructions given to [Titledge] by [Stewart] which relate to the issuance of [Stewart's] title assurances or to the liability of [Stewart] hereunder."

Paragraph 24 of the underwriting agreement provided,

> "Escrow Transfer Upon Termination. Upon termination of this Agreement, for whatsoever cause,

[Stewart] shall have the right to review any escrow or indemnity deposits and funds held by [Titledge] which were collected as a result of title assurances of [Stewart] having been issued. Escrow or Indemnity deposits also includes any undisbursed recording fees, real estate taxes, gross premiums, including but not limited to funds referenced by Subparagraph 4.J, not disbursed by [Titledge] as of the date of termination of this Agreement.

"Upon termination of this Agreement, [Stewart] shall be entitled to the immediate transfer and possession of all such escrow or indemnity deposits held by [Titledge]. [Titledge] will be responsible for delivering to [Stewart], within ten (10) business days after termination of this Agreement, the appropriate certified funds, payable to [Stewart], including the original Escrow, Indemnity or Deposit Agreement and whatever appropriate documentation would be required to release or act upon the requirement of the Indemnity, Escrow or Deposit Agreement. Such documentation must include any partial disbursements and information associated with any disbursement which reduced the original Escrow, Indemnity or Deposit."

In support of its motion, Stewart also submitted a copy of the escrow agreement between the plaintiff, CMAC, LP, and Titledge dated June 27, 2006. In the escrow agreement, Titledge was described as "an authorized agent for Stewart Title Insurance Company ('Escrowee')." The escrow agreement stated that $635,193.50 of the loan proceeds would be deposited into escrow with the escrowee Titledge, and sums from those proceeds were to be periodically disbursed in accordance with the escrow agreement as, inter alia, certain interior renovation work progressed, and expenses in establishing a day care center were incurred. The escrow agreement also provided for a specific procedure pursuant to which the plaintiff could make periodic draws on the escrow account. The agreement was signed by a representative of Titledge as "ESCROWEE: [¶] TITLEDGE, AN AUTHORIZED AGENT FOR STEWART TITLE INSURANCE COMPANY."

Stewart also included in support of its motion a copy of a letter from a law firm representing CMAC, LP, to Titledge dated June 26, 2006. This letter detailed certain of Titledge's respon-

sibilities leading up to, during, and after the closing, including responsibilities pertaining to the escrow funds. The letter also required, and had, a signature of a representative of Titledge as follows:

> "We agree to issue the Title Policy and perform our other obligations under this letter as provided above.
>
> "STEWART TITLE INSURANCE COMPANY
>
> "BY: Titledge
>
> "Its: Authorized Agent."

The Plaintiff's Opposition

In opposition to Stewart's motion, the plaintiff submitted an affidavit sworn to by Ramsarram Singh, the pastor for the plaintiff. Singh asserted that Titledge entered into the escrow agreement as an authorized agent of Stewart, and claimed that Stewart knew that Titledge was holding itself out as Stewart's agent. Further, Singh claimed that the underwriting agreement demonstrated the intent of Stewart that Titledge hold escrow funds. Regarding the breach of fiduciary duty cause of action, Singh asserted that Stewart had a fiduciary duty to advise the plaintiff of Titledge's and Boxman's misappropriation of escrow funds, but it failed to do so.

Among its opposition papers, the plaintiff submitted a copy of a verified complaint in an action entitled *Stewart Title Ins. Co. v Boxman*, commenced in the Supreme Court, Westchester County, under index No. 23733/08. That action was commenced by Stewart, and Titledge and Boxman were among the named defendants. That complaint alleged, inter alia, that Boxman was a controlling member, principal, and officer of Titledge. The complaint also alleged that

> "[p]ursuant to a written agreement, dated March 31, 2005 by and between [Stewart] and Titledge . . . , Titledge . . . agreed to act as limited agent for [Stewart] to the extent of issuing, on behalf of [Stewart], policies of title insurance to purchasers and lenders in connection with closings attendant to real estate transactions and mortgage loans given in connection therewith."

The complaint alleged that Titledge conducted and attended closings in connection with its function as a limited agent to Stewart. The complaint further alleged that Titledge

"collected payments for fees and insurance premiums earned, and took custody, in escrow, of funds to be used for the payment of transfer taxes, recording fees, and similar transaction charges assesse[d] to sellers, purchasers, borrowers, and lenders at the closings, together with the funds to be used as payment for the satisfaction of liens against real property bought and sold at the Closings."

In addition, Titledge "issued policies of title insurance to purchasers and lenders on behalf of [Stewart] and took custody, in escrow, of deeds, mortgages, and other documents and instruments for recording." The complaint further alleged that the underwriting agreement with Titledge was terminated on May 23, 2007. According to the complaint, on September 23, 2008, Boxman admitted that he had misappropriated more than $600,000 in funds held in escrow pursuant to various underwriting agreements, including the underwriting agreement between Stewart and Titledge. The complaint alleged that, as a result of this and other actions by Titledge and other agencies operated by Boxman, Stewart could be exposed to "catastrophic liability." Stewart asserted causes of action against Titledge sounding in breach of contract, breach of fiduciary duty, conversion, negligence, fraud, contractual indemnification, and equitable accounting.

The Order Denying the Motion to Dismiss

In the instant action, in an order entered August 13, 2010, the Supreme Court denied Stewart's motion pursuant to CPLR 3211 (a) (1) and (7) to dismiss the complaint insofar as asserted against it.

In an accompanying memorandum decision, with regard to that branch of Stewart's motion which was pursuant to CPLR 3211 (a) (7) to dismiss the causes of action relying on an agency theory for failure to state a cause of action, the Supreme Court stated that the plaintiff had adequately alleged that Titledge entered into the escrow agreement as an agent on behalf of Stewart.

With regard to that branch of the motion which was to dismiss the same causes of action pursuant to CPLR 3211 (a) (1) on the basis of documentary evidence, the Supreme Court held that the "underwriting agreement does not conclusively establish that . . . Titledge's authority was limited only to the issuance

of title insurance policies on behalf of the insurer." The court found that the documentary evidence did not eliminate factual issues concerning whether the conferring of actual authority to issue title assurance policies carried with it the implied authority to hold funds in escrow.

Regarding those branches of the motion which were to dismiss the cause of action sounding in breach of fiduciary duty pursuant to CPLR 3211 (a) (1) and (7), the Supreme Court concluded that the plaintiff adequately alleged that Stewart, "as an agent," breached a fiduciary duty owed to the plaintiff by failing to notify the plaintiff concerning Titledge's and Boxman's misappropriation of escrow funds, and that the documentary evidence submitted was not dispositive.

## Stewart's Motion for Leave to Reargue

Stewart moved for leave to reargue, asserting that the Supreme Court misapprehended the law and the facts in denying its motion to dismiss the complaint. In its attorney affirmation submitted in support of its motion for leave to reargue, Stewart asserted, among other things, that an agency relationship cannot be created by the words or conduct of a purported agent, and that the underwriting agreement between Stewart and Titledge did not authorize Titledge to enter into an escrow agreement or take possession of the escrow funds that are at issue here.

In opposition, the plaintiff asserted that Stewart failed to demonstrate that the Supreme Court misapprehended any facts or misapplied any controlling principle of law.

## The Order Appealed From

In an order entered March 17, 2011, the Supreme Court granted that branch of Stewart's motion which was for leave to reargue and, upon reargument, adhered to its prior determination denying Stewart's motion to dismiss the complaint insofar as asserted against it.

## Analysis

### Standard of Review

"A motion to dismiss pursuant to CPLR 3211 (a) (1) 'may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law' " (*Cervini v Zanoni*, 95 AD3d 919, 920-921 [2012], quoting *Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]; *see Leon v Martinez*,

84 NY2d 83, 88 [1994]; *Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 38 AD3d 34, 38 [2006]).

" 'When a party moves to dismiss a complaint pursuant to CPLR 3211 (a) (7), the standard is whether the pleading states a cause of action, not whether the proponent of the pleading has a cause of action' " (*Bokhour v GTI Retail Holdings, Inc.*, 94 AD3d 682, 682 [2012], quoting *Sokol v Leader*, 74 AD3d 1180, 1180-1181 [2010]; *see Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). " 'In considering such a motion, the court must accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory' " (*Bokhour v GTI Retail Holdings, Inc.*, 94 AD3d at 682, quoting *Sokol v Leader*, 74 AD3d at 1181; *see Nonnon v City of New York*, 9 NY3d 825, 827 [2007]; *Leon v Martinez*, 84 NY2d at 87-88). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus" (*Bokhour v GTI Retail Holdings, Inc.*, 94 AD3d at 682 [internal quotation marks omitted]; *see EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]; *Sokol v Leader*, 74 AD3d at 1181).

## Causes of Action Premised on Agency

The 2nd, 5th, 11th, 14th, and 17th causes of action are all premised on the theory that Titledge was Stewart's agent.

> "Agency is a legal relationship between a principal and an agent. It is a fiduciary relationship which results from the manifestation of consent of one person to allow another to act on his or her behalf and subject to his or her control, and consent by the other so to act. The agent is a party who acts on behalf of the principal with the latter's express, implied, or apparent authority" (*Maurillo v Park Slope U-Haul*, 194 AD2d 142, 146 [1993] [citations omitted]; *see G.K. Alan Assoc. Inc. v Lazzari*, 66 AD3d 830, 833 [2009]; *Time Warner City Cable v Adelphi Univ.*, 27 AD3d 551, 552 [2006]).

"[A] principal must answer to an innocent third person for the misconduct of an agent acting within the scope of its authority" (*Tucci v Hartford Cas. Ins. Co.*, 167 AD2d 387, 388 [1990]; *see Bowers v Merchants Mut. Ins. Co.*, 248 AD2d 1005, 1006 [1998]; *First Nationwide Bank v 965 Amsterdam*, 212 AD2d 469, 470 [1995]; 2A NY Jur 2d, Agency § 288).

Accepting the facts as alleged in the complaint as true, according the plaintiff the benefit of every possible favorable infer-

ence, and determining only whether the facts as alleged fit within any cognizable legal theory (*see Nonnon v City of New York*, 9 NY3d at 827; *Leon v Martinez*, 84 NY2d at 87-88; *Bokhour v GTI Retail Holdings, Inc.*, 94 AD3d at 682; *Sokol v Leader*, 74 AD3d at 1181), we conclude that the 2nd, 5th, 11th, 14th, and 17th causes of action sufficiently state causes of action premised on a theory of agency.

Turning to the documentary evidence submitted in support of Stewart's motion, Stewart contends that the underwriting agreement between it and Titledge, and the escrow agreement between the plaintiff, CMAC, LP, and Titledge, demonstrate that Titledge had no actual authority to enter into the subject escrow agreement or to take possession of the subject escrow funds on behalf of Stewart.

However, paragraph 4 of the underwriting agreement between Stewart and Titledge provided, in pertinent part, that Titledge shall

"segregate and safely keep in a separately designated trust account all moneys entrusted to [Titledge] by [Stewart] and others, including, but not limited to, fiduciary funds, indemnity deposits and [Stewart's] portion of all funds due [Stewart]. Said funds shall be used for no other purpose than for which entrusted to [Titledge]. With respect to said funds, [Titledge] shall perform and carry out all instructions given to [Titledge] by [Stewart] which relate to the issuance of [Stewart's] title assurances or to the liability of [Stewart] hereunder."

Additionally, paragraph 24 of the underwriting agreement provided, in pertinent part:

"Escrow Transfer Upon Termination. Upon termination of this Agreement, for whatsoever cause, [Stewart] shall have the right to review any escrow or indemnity deposits and funds held by [Titledge] which were collected as a result of title assurances of [Stewart] having been issued. Escrow or Indemnity deposits also includes any undisbursed recording fees, real estate taxes, gross premiums, including but not limited to funds referenced by Subparagraph 4.J, not disbursed by [Titledge] as of the date of termination of this Agreement."

Contrary to Stewart's contention, we conclude that the documentary evidence it submitted in support of its motion

does not " 'utterly refute[ ] plaintiff's factual allegations, conclusively establishing a defense as a matter of law' " (*Cervini v Zanoni*, 95 AD3d at 920-921, quoting *Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d at 326; *see Leon v Martinez*, 84 NY2d at 88; *Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 38 AD3d at 38), which would entitle Stewart to relief pursuant to CPLR 3211 (a) (1).

 The language of the underwriting agreement set forth above does not utterly refute the plaintiff's allegations that Titledge was authorized to act as Stewart's agent in entering into the escrow agreement and holding the escrow funds, and in fact did so (*cf. HSA Residential Mtge. Servs. of Tex., Inc. v Stewart Tit. Guar. Co.*, 7 AD3d 426, 427 [2004] [plaintiff's allegations that the title insurer defendants are responsible as principals for the master settlement agent's diversion of mortgage funds advanced by plaintiff is contradicted by the language of the underwriting agreements]). Stewart is correct that paragraph 3 of the underwriting agreement expressly states that Titledge was not permitted "to perform any act for [Stewart] not expressly authorized herein." However, contrary to Stewart's contention, this does not entitle it to dismissal of these causes of action, because the language of the underwriting agreement does not conclusively establish that Titledge was not authorized to enter into the escrow agreement as Stewart's agent. There is no language in the underwriting agreement which expressly limits Titledge's authority only to the issuance of title insurance policies and the collection of premiums for those policies on Stewart's behalf. Moreover, the underwriting agreement clearly contemplates Titledge taking possession of escrow funds for a variety of purposes. Therefore, although the underwriting agreement indeed prohibits Titledge from performing acts, as agent for Stewart, not expressly authorized under that agreement, the documentary evidence does not conclusively establish that Titledge, in acting as escrowee here, performed acts not expressly authorized under the underwriting agreement, or was acting outside the scope of its actual authority as contemplated by the underwriting agreement.

Accordingly, we conclude that the Supreme Court properly, upon reargument, adhered to its original determination denying those branches of Stewart's motion which were to dismiss the 2nd, 5th, 11th, 14th, and 17th causes of action pursuant to CPLR 3211 (a) (1) and (7).

Breach of Fiduciary Duty

In the 25th cause of action, the plaintiff alleged that Stewart breached the fiduciary duty it owed to the plaintiff. Specifically, the plaintiff alleged that after the establishment of the escrow account but before July 31, 2008, Stewart terminated its agreement with Titledge due to its belief that Titledge and Boxman had mishandled escrow funds; that, on or about September 23, 2008, Boxman acknowledged to Stewart that he had misappropriated escrow funds and that escrow funds entrusted to Titledge had been misappropriated; that Stewart failed to advise the plaintiff that Titledge, Stewart's agent, had misappropriated escrow funds; that Stewart had a fiduciary duty to so advise the plaintiff; and that, by failing to do so, Stewart breached its fiduciary duty to the plaintiff.

With regard to that branch of Stewart's underlying motion which was to dismiss the 25th cause of action, Stewart pointed out that a plaintiff is required to plead a cause of action premised on breach of fiduciary duty with sufficient particularity pursuant to CPLR 3016 (b). Stewart further asserted that the plaintiff failed to allege specific facts which would give rise to the alleged fiduciary relationship with sufficient particularity to enable a court to determine whether, if true, those facts actually could give rise to a fiduciary relationship.

In the memorandum decision issued in connection with the order entered August 13, 2010, the Supreme Court reviewed the allegations in the 25th cause of action, observed that agents owe their principals duties of loyalty, obedience, and reasonable care, and concluded that the 25th cause of action adequately stated facts "alleging that Stewart as an agent breached a fiduciary duty owed to the plaintiff and the documentary evidence in this case is not dispositive."

In support of its motion for leave to reargue, Stewart asserted that, contrary to the Supreme Court's determination, no party alleged or established that Stewart served as any party's agent. Stewart further reiterated its position that the plaintiff failed to sufficiently allege the existence of a fiduciary relationship between Stewart and the plaintiff.

The Supreme Court, upon reargument, adhered to its determination concerning the 25th cause of action.

" 'The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct' " (*Armentano v Paraco Gas Corp.*, 90 AD3d 683, 684 [2011], quoting *Rut v*

*Young Adult Inst., Inc.*, 74 AD3d 776, 777 [2010]). "A fiduciary relationship 'exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation' " (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d at 19, quoting Restatement [Second] of Torts § 874, Comment *a*; *see Roni LLC v Arfa*, 18 NY3d 846, 848 [2011]). Such a relationship "may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge, but an armslength business relationship does not give rise to a fiduciary obligation" (*WIT Holding Corp. v Klein*, 282 AD2d 527, 529 [2001] [citations omitted]; *see EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d at 19; *Carbon Capital Mgt., LLC v American Express Co.*, 88 AD3d 933, 938 [2011]). The core of a fiduciary relationship is "a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions" (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d at 19). "A breach of fiduciary duty cause of action must be pleaded with the requisite particularity under CPLR 3016 (b)" (*Parekh v Cain*, 96 AD3d 812, 816 [2012]; *see Palmetto Partners, L.P. v AJW Qualified Partners, LLC*, 83 AD3d 804, 808 [2011]).

█ Here, the 25th cause of action, considered in the context of the entire complaint, fails to set forth facts in sufficient detail as required by CPLR 3016 (b) which, if proven, would demonstrate that Stewart owed a fiduciary duty to the plaintiff (*cf. Chiu v Man Choi Chiu*, 71 AD3d 621, 623 [2010]). The complaint alleges in the most conclusory fashion that Stewart owed a fiduciary duty to the plaintiff. No facts are alleged with any particularity from which it could be concluded that Stewart had a duty to act for or give advice for the benefit of the plaintiff, or, indeed, that any type of a relationship of trust existed between them which would give rise to a fiduciary obligation on Stewart's part. In the absence of sufficient factual allegations to indicate the existence of a fiduciary relationship between the plaintiff and Stewart, the allegations of the complaint were insufficient to satisfy the requirements of CPLR 3016 (b).

Thus, we disagree with the Supreme Court's conclusion that the 25th cause of action "adequately states facts alleging that . . . Stewart" owed a fiduciary duty to the plaintiff. Additionally, contrary to the Supreme Court's determination, there is no assertion, and no allegation of any facts that would support the proposition, that Stewart served as agent to any party herein.

Accordingly, we conclude that the Supreme Court, upon reargument, should have granted that branch of Stewart's motion which was to dismiss the 25th cause of action pursuant to CPLR 3211 (a) (7) (*see First Keystone Consultants, Inc. v DDR Constr. Servs.*, 74 AD3d 1135, 1137 [2010]).

Remaining Contentions

In light of our determination, we need not reach the parties' remaining contentions.

## Conclusion

Based on the foregoing, we conclude that the Supreme Court, upon reargument, should have granted that branch of Stewart's motion which was to dismiss the 25th cause of action pursuant to CPLR 3211 (a) (7). Otherwise, the Supreme Court properly, upon reargument, adhered to its prior determination.

Accordingly, the order entered March 17, 2011, is modified, on the law, by deleting the provision thereof which, upon reargument, adhered to so much of the determination in the order entered August 13, 2010, as denied that branch of the motion of the defendant Stewart Title Insurance Company which was pursuant to CPLR 3211 (a) (7) to dismiss the 25th cause of action, and substituting therefor a provision, upon reargument, vacating so much of the order entered August 13, 2010, as denied that branch of the motion, and thereupon granting that branch of the motion; as so modified, the order entered March 17, 2011, is affirmed insofar as appealed from.

ANGIOLILLO, J.P., AUSTIN and COHEN, JJ., concur.

Ordered that the order entered March 17, 2011, is modified, on the law, by deleting the provision thereof which, upon reargument, adhered to so much of the determination in the order entered August 13, 2010, as denied that branch of the motion of the defendant Stewart Title Insurance Company which was pursuant to CPLR 3211 (a) (7) to dismiss the 25th cause of action, and substituting therefor a provision, upon reargument, vacating so much of the order entered August 13, 2010, as denied that branch of the motion, and thereupon granting that branch of the motion; as so modified, the order entered March 17, 2011, is affirmed insofar as appealed from, without costs or disbursements.