J-A27038-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TIMOTHY MEHRTENS AND LAWRENCE LITVAK, Successor Co-Trustees of the Elizabeth Ackerman Trust Under Agreement Dated December 18, 1967, | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : | |
| FIDUCIARY TRUST COMPANY INTERNATIONAL, | : : : | |
| Appellee | : | No. 92 WDA 2014 |

Appeal from the Order entered on May 24, 2013
in the Court of Common Pleas of Mercer County
Orphans' Court Division at No. 2012-452

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED JANUARY 22, 2015**

Timothy Mehrtens and Lawrence Litvak, Successor Co-Trustees of the Elizabeth Ackerman Trust Under Agreement Dated December 18, 1967, (collectively "Trustees") appeal from the Order granting the Preliminary Objections filed by Fiduciary Trust Company International ("Fiduciary Trust"), and dismissing the Trustees' Complaint with prejudice.[1]  We affirm in part and reverse in part.

Elizabeth W. Ackerman, now known as Elizabeth Werner ("Elizabeth"), created an irrevocable trust ("Trust") under an Agreement of Trust ("Trust

---

[1] The trial court dismissed all of the Trustees' claims except for their aiding and abetting a breach of a fiduciary duty claim.  However, as noted *infra*, the Trustees voluntarily dismissed the remaining claim to file the instant appeal.

Agreement") on December 18, 1967. The Trust Agreement named Elizabeth as the settlor of the Trust and First Seneca Bank and Trust Company ("First Seneca") as the trustee. Elizabeth is alive and the Trust continues to benefit her.

The purpose of the Trust was to manage property held in the trust for the benefit of Elizabeth and, after her death, her children. The Trust Agreement provides that the trustee pay the net income of the Trust to Elizabeth during her lifetime. The Trust Agreement also provides the trustee with discretionary authority to access the principal of the Trust for "maintenance, support, medical and surgical care of [Elizabeth], her spouse and children, and for the complete education of [Elizabeth] and her children." Trust Agreement, 12/18/67, at 2. However, the Trust Agreement also states that the trustee "shall not, during [Elizabeth's] lifetime, make any distributions of income or principal to or for the benefit of any person other than [Elizabeth] unless [Elizabeth] shall have authorized the same by written authorization filed with the [t]rustee." *Id*. at 3. The Trust Agreement grants Elizabeth the power and authority to nominate and appoint a new trustee(s) in the event of a vacancy. The Trust Agreement additionally provides that the Trust should be construed, regulated, and administered in Pennsylvania and that the venue for all purposes regarding the Trust shall be in Mercer County and that the Orphans' Court of Mercer County shall have exclusive jurisdiction over the Trust.

In March 1998, First Seneca resigned as trustee, and Elizabeth appointed her son, Jeffrey Ackerman ("Ackerman"), as successor trustee. On July 11, 1998, Ackerman, as trustee, entered into a Custody Agreement ("Custody Agreement") with Fiduciary Trust, wherein Fiduciary Trust acted as an agent for the Trust. As part of the Custody Agreement, Ackerman deposited approximately $10 million in trust assets with Fiduciary Trust. Ackerman identified himself as one of the managers of the account and authorized Fiduciary Trust to rely on his oral or written instructions. The Custody Agreement also stated that any instructions given by Ackerman would be in accordance with the governing instrument and applicable law.[2] The Custody Agreement stated that Fiduciary Trust's "responsibilities are solely as stated in this agreement and will be performed with reasonable care and in accordance with relevant trade practices." Custody Agreement, 7/31/98, at 2 (unnumbered). The Custody Agreement provides that it would be "governed by the laws of the State of New York (without regard to any laws that might otherwise apply under principles of conflicts of law)." *Id*. at 3 (unnumbered).

From 1998 to 2010, Fiduciary Trust, at Ackerman's direction, transferred approximately $9 million in trust assets to Ackerman. The numerous transactions were made without Elizabeth's authorization or

_____

[2] According to the Complaint, Fiduciary Trust was familiar with the terms of the Trust Agreement, including the provision prohibiting the trustee from distributing trust principal to anyone other than Elizabeth without her written authorization. Complaint, 9/10/12, at 4.

knowledge. In September 2010, Ackerman resigned as trustee of the Trust. Elizabeth thereafter appointed the Trustees.

In June 2011, the Trustees filed an action against Fiduciary Trust seeking $9 million in Surrogate's Court in Westchester County, New York.[3] On January 11, 2012, the Surrogate's Court dismissed the action, finding that jurisdiction for the Trustees' claims lies with the Orphans' Court in Mercer County.

On September 10, 2012, the Trustees filed a Complaint against Fiduciary Trust alleging breach of contract, breach of fiduciary duty, negligence, conversion, unjust enrichment, aiding and abetting a breach of fiduciary duty, and aiding and abetting a conversion. Fiduciary Trust filed Preliminary Objections, claiming, *inter alia*, that the Trustees' claims were legally insufficient. Fiduciary Trust also sought to stay the proceedings pending final resolution of the Massachusetts bankruptcy proceedings. The trial court granted Fiduciary Trust's Preliminary Objections and dismissed all of the Trustees' causes of action except for the aiding and abetting a breach

---

[3] The Trustees had filed an action against Ackerman, his wife, and his attorneys in the Superior Court of Middlesex County, Massachusetts. Ackerman filed a bankruptcy petition in the United States Bankruptcy Court for the District of Massachusetts. The Trustees subsequently brought an adversary proceeding in the Bankruptcy Court to determine the dischargeability of Ackerman's debt to the Trust.

of fiduciary duty claim.[4]  The trial court also denied Fiduciary Trust's Motion to Stay.

The Trustees filed a Motion for Leave to Amend Complaint, seeking to file an amended complaint with additional allegations of facts.  Fiduciary Trust filed a brief in opposition to the Trustees' Motion.  The trial court denied the Trustees' Motion.  As a result, the Trustees filed a Praecipe to discontinue the aiding and abetting a breach of fiduciary duty claim.  Thereafter, the Trustees filed a Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, the Trustees raise the following questions for our review:

A. Did the trial court err in sustaining the demurrer to, and refusing to allow an amendment to, the Trust's breach of contract claim against Fiduciary Trust because the Trust has alleged all of the elements of a contract claim and the facts alleged must be accepted as true at the pleading stage?

B. Did the trial court err in sustaining the demurrer to, and refusing to allow an amendment to, the Trust's breach of fiduciary duty claim against Fiduciary Trust because the Trust has alleged all of the elements of a breach of fiduciary duty claim and the facts alleged must be accepted as true at the pleading stage?

Brief for Appellants at 5.

Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law.  When considering the appropriateness of a ruling on preliminary

---

[4] The trial court found, and the parties agreed, that New York substantive law and Pennsylvania procedural law govern this case.  Trial Court Opinion, 5/21/13, at 2.

objections, the appellate court must apply the same standard as the trial court.

> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Joyce v. Erie Ins. Exch.*, 74 A.3d 157, 162 (Pa. Super. 2013) (citation omitted).

In their first claim, the Trustees contend that they properly stated a valid breach of contract claim against Fiduciary Trust. Brief for Appellants at 24, 33. The Trustees argue that there is no dispute that the Custody Agreement is a valid and binding contract between the Trust and Fiduciary Trust, that Fiduciary Trust breached its contractual obligations, and that the Trust suffered damages. *Id*. The Trustees claim that Fiduciary Trust breached its contractual obligations under Paragraph 8 of the Custody Agreement by failing to perform its responsibilities with reasonable care and in accordance with relevant trade practices. *Id*. at 24-25, 29, 33. The Trustees argue that the trial court failed to recognize that Fiduciary Trust breached the Custody Agreement because of **how** it performed the duties required of it by failing to use reasonable care or adhere to relevant trade practices. *Id*. at 25; *see also id*. at 25-26, 30 (wherein the Trustees assert

that the trial court's interpretation of this clause rendered it meaningless). The Trustees assert that because the terms "reasonable care" and "relevant trade practices" are not defined in the Custody Agreement, New York law allows courts to consider extrinsic evidence, *i.e.*, Fiduciary Trust's internal policies and procedures, to explain the terms. *Id*. at 26-28. The Trustees further assert that contrary to the trial court's finding, they did not need to be aware of or rely on Fiduciary Trust's internal policies and procedures to prove that they were terms of the contract. *Id*. at 28-29.

> The Trustees specifically allege that

> despite its knowledge of Ackerman's suspicious activities, and the unreasonableness of relying upon his representations, Fiduciary Trust failed to undertake reasonable efforts to scrutinize his purpose and authority to make distributions from the Trust and to hypothecate the Trust's assets; failed to exercise due diligence; failed to investigate unusual and/or suspicious activity and transactions; ignored violations of the terms of the Trust; failed to seek explanations of transactions; failed to establish and/or measure Ackerman's actions against a baseline of account activity; and failed to communicate with [Elizabeth].

*Id*. at 29-30. The Trustees claim that the trial court improperly found that Fiduciary Trust could blindly follow Ackerman's directives "regardless of how unreasonable or out-of-line with relevant trade practices those instructions may have been[.]" *Id*. at 31. The Trustees point out that in separate instances in 2004 and 2006, Fiduciary Trust stated that the Trust Agreement necessitated Elizabeth's written authorization for the hypothecation of trust assets. *Id*. at 31-32. The Trustees contend that this conduct demonstrated

that Fiduciary Trust took steps to act with reasonable care and in accordance with normal trade practices on occasion. *Id*. at 32.[5]

"The essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach." *Canzona v. Atanasio*, 989 N.Y.S.2d 44, 47 (N.Y.A.D. 2d Dep't 2014) (citation and quotation marks omitted). "[T]he plaintiff's allegations must identify the provisions of the contract that were breached." *Id*. (citation omitted).

"[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Kolbe v. Tibbetts*, 3 N.E.3d 1151, 1156 (N.Y. 2013) (citation omitted). "[A] court should not read a contract so as to render any term, phrase, or provision meaningless or superfluous." *Givati v. Air Techniques, Inc.*, 960 N.Y.S.2d 196, 198 (N.Y.A.D. 2d Dep't 2013). "Instead, the entire contract must be

---

[5] We note that in their brief, the Trustees cite to facts and allegations contained in the "Amended Complaint." However, as noted above, the trial court granted Fiduciary Trust's Preliminary Objections to the Trustees' Complaint and denied the Trustees' Motion for Leave to Amend Complaint. The Trustees have not raised an argument related to the trial court's denial of their Motion for Leave to Amend Complaint. Thus, as the Trustees are appealing the trial court's grant of the Preliminary Objections on the Complaint, and no Amended Complaint was filed, we are constrained to review the Trustees' allegations based upon the Complaint. *See Albert v. Erie Ins. Exch.*, 65 A.3d 923, 928 (Pa. Super. 2013) (stating that "[i]n an appeal from an order granting preliminary objections in the nature of a demurrer we accept as true all well-pleaded material facts in the complaint, as well as all reasonable inferences deducible therefrom." (citation and quotation omitted)).

reviewed and particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought." *Id*. (citation, brackets, and quotation marks omitted).

In relevant part, the Custody Agreement states the following:

Custody Agreement for Account Entitled "The Elizabeth W. Ackerman Trust 12/18/67 – Jeffrey R. Ackerman, Trustee"

1. **Custody Account.** Please maintain, as agent for the undersigned [Ackerman as trustee], a Custody Account in the name specified above and receive and hold all assets that are delivered to you for the Account ("Account Assets"). We will deliver to you only assets owned solely by us in the capacity specified with our signatures ("our legal capacity").

\*\*\*

3. **Instructions.** We authorize you to rely on oral or written instructions or notices received from us or from such person(s) as we may designate to you in writing as the manager(s) of the Account (Investment Manager"). Please comply with the following special instructions: … Jeffrey R. Ackerman. …

4. **Administrative Provisions.**

(a) **Income.** Please Remit case income as follows: Per my written instructions ...

\*\*\*

(d) **Purchase and Sales.** Whenever possible, please effect such Account trades as our Investment Manager or we direct from time to time. …

(e) **Proxies.** Please dispose of proxies received with respect to securities in the Account as follows: Deliver to the investment manager.

\*\*\*

**5. Our Warranties.** We each warrant that:

(a) any instructions given or rights granted to you by us under this Agreement are or will be in accordance with the governing instrument and applicable law;

(b) we are the only persons legally authorized to act for the Account in our legal capacity;

\*\*\*

(d) we have accurately listed below the information specified with respect to each beneficiary to whom income or principal is or may be currently distributable and each relevant trustee, executor, custodian under Uniform Gifts to Minors Act, trust and estate:

Elizabeth Werner
Jeffrey R. Ackerman

\*\*\*

**8. Your Responsibility.** Your responsibilities are solely as stated in this Agreement and will be performed with reasonable care and in accordance with relevant trade practices.

**9. General Indemnification.** We agree to indemnify you for any expense or liability (including attorney's fees) incurred by you with respect to the Account when acting in accordance with this Agreement.

\*\*\*

Custody Agreement, 7/31/98, at 1-3 (unnumbered).

The trial court addressed the Trustees' breach of contract claim as follows:

In Count I of their Complaint, [Trustees] allege a breach of contract, claiming that Fiduciary Trust breached paragraph 8 of

- 10 -

the Custody Agreement. In quoting paragraph 8 in their Complaint and their Brief in Opposition to [Fiduciary Trust's] Preliminary Objections, [Trustees] consistently quote paragraph 8 as requiring that Fiduciary Trust "perform all duties 'with reasonable care and in accordance with relevant trade practices.'" [Trustees] thus ignore the entirety of paragraph 8 which, in fact, states: "[**Fiduciary Trust's**] **responsibilities are solely as stated in this Agreement and** will be performed with reasonable care and in accordance with relevant trade practices." The first part of paragraph 8, "[Fiduciary Trust's] responsibilities are solely as stated in this Agreement," completely undercuts [Trustees'] position, which depends on using "will be performed with reasonable care and in accordance with relevant trade practices" to import additional, extra-contractual[] obligations into the Custody Agreement itself. In other words, "will be performed with reasonable care and in accordance with relevant trade practices" delineates **how** the specific, limited duties set forth in the Custody Agreement "will be performed," it does not delineate **what** those duties are.

\*\*\*

More broadly, [Trustees'] position would require [the trial c]ourt to simply ignore other provisions of the Custody Agreement. The gravamen of [Trustees'] Complaint is that Fiduciary Trust owed a duty … to the beneficiaries of the Trust (or the Trust itself) that required Fiduciary Trust to stop the Trustee from looting the Trust. However, the Custody Agreement explicitly stated that "[Jeffrey R. Ackerman, Trustee] authorize[d] [Fiduciary Trust] to rely on oral or written instructions or notices received from [him].…" Further, [Jeffrey R. Ackerman, Trustee,] warranted that … any instructions given … by [him] … under [the Custody Agreement] are or will be in accordance with the governing instrument and applicable law" and that [Jeffrey R. Ackerman, Trustee,] [was] the only person[] legally authorized to act for the Account in [his] legal capacity." [Trustees] have failed to identify any contractual provisions that would require Fiduciary Trust to do more than carry out the request of the Trustee.

Trial Court Opinion, 5/21/13, at 3-4 (citations and some emphasis omitted).

Here, the Trustees argue that Fiduciary Trust failed to use "reasonable care" or act "in accordance with relevant trade practices" in following Ackerman's instructions with regard to the Trust. However, under the terms of the Custody Agreement, Fiduciary Trust was obligated to follow Ackerman's instructions. Custody Agreement, 7/31/98, at ¶¶ 3, 4(a), (d), (e). Furthermore, under the Custody Agreement, Ackerman warranted that his instructions would be in accordance with the governing instrument (the Trust Agreement) and relevant law. *Id*. at ¶ 5. Fiduciary Trust had no decision-making authority or responsibility to monitor Ackerman's instructions, as it was limited to the plain terms of the Custody Agreement. *Id*. at ¶ 3. Thus, the Custody Agreement contemplated that Fiduciary Trust would carry out Ackerman's instructions and would make no decisions regarding the Trust assets.

The Trustees have not properly alleged, nor presented a sufficient factual basis to allege, that the Trustees failed to perform their duties under the Custody Agreement, with reasonable care or in accordance with relevant trade practices, where Fiduciary Trust was obligated to follow Ackerman's instructions under the plain terms of the Custody Agreement. Indeed, the Trustees do not allege that Fiduciary Trust disregarded any instructions provided by Ackerman, or failed to carry out Ackerman's instructions with reasonable care or in accordance with relevant trade practices. While the Trustees point to Fiduciary Trust's internal policies, in their Amended

Complaint, to demonstrate that Fiduciary Trust failed to act reasonably or in accordance with relevant trade practices, as noted above, the trial court never allowed the Trustees to file the Amended Complaint. In any event, the Trustees have not demonstrated that Fiduciary Trust's internal policies were legally incorporated into the Custody Agreement or that Fiduciary Trust was not required to rely on Ackerman's instructions based upon these policies. **See** Trial Court Opinion, 11/4/13, at 4 n.2 (wherein the trial court points out that the Trustees failed to allege that Ackerman knew of or relied upon Fiduciary Trust's internal policies when entering into the Custody Agreement on behalf of the Trust).

Accordingly, under the Custody Agreement, Fiduciary Trust was required to execute the directives it received from Ackerman, and to do so with reasonable care and in accordance with relevant trade practices. Additionally, the Custody Agreement imposed no obligation upon Fiduciary Trust to ensure that Ackerman's instructions regarding the Trust's assets met the requirements of the Trust Agreement. Based upon the foregoing, we conclude that the Trustees' allegations, accepted as true, failed to state a claim for breach of contract. **See Lamm v. State Street Bank and Trust**, 749 F.3d 938, 945 (11th Cir. 2014) (applying New York law and concluding that motion to dismiss was properly granted for a breach of contract claim against a custodial bank, where under the custody agreement, the bank held the customer's assets, carried out investments according to instructions

from an agent, assumed no responsibility for supervising investments or making investment recommendations, and limited its duties to those set forth in the agreement); *see also New York Cmty. Bank v. Snug Harbor Square Venture*, 749 N.Y.S.2d 170, 171 (N.Y.A.D. 2d Dep't 2002) (stating that "the documentary evidence that forms the basis of the defense must resolve all factual issues as a matter of law, and conclusively dispose of the plaintiff's claim.").

In their second claim, the Trustees contend that the trial court improperly dismissed their breach of fiduciary duty claim against Fiduciary Trust. *See* Brief for Appellants at 33-34, 43-44. The Trustees argue that Fiduciary Trust owed a fiduciary duty to the Trust, as it was declared an agent for the Trust and was entrusted with $10 million of the Trust's assets. *Id*. at 34, 36-39; *see also id*. at 34-35 (wherein the Trustees contend that under New York law, a party may raise distinct breach of contract and breach of fiduciary duty claims even where the same facts give rise to liability under both claims). The Trustees further point out that under the Custody Agreement, Fiduciary Trust agreed to perform its obligations with reasonable care and in accordance with trade practices, and that it was aware that Elizabeth's express written authorization was needed for transactions involving the Trust's assets. *Id*. at 36-37, 38; *see also id*. at 42 (wherein the Trustees argue that Fiduciary Trust failed to follow its internal policies and procedures in distributing the Trust assets). The

Trustees assert that Fiduciary Trust breached its duties by failing to question Ackerman's orders in light of its knowledge of the Trust's requirement that Elizabeth give written authorization to distribute Trust assets and its own internal policies and procedures, and this breach caused the Trust damages. *Id*. at 39-40, 42. The Trustees claim that the trial court's finding that Fiduciary Trust would have violated its duties as an agent had it disregarded Ackerman's directions contradicts New York law, which recognizes that, where a principal's directives are unreasonable, an agent is not bound to follow them. *Id*. at 40.

The elements of a cause of action to recover damages for breach of fiduciary duty are

> (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct. A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation. Such a relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge, but an arms-length business relationship does not give rise to a fiduciary obligation. The core of a fiduciary relationship is a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions.

*Faith Assembly v. Titledge of New York Abstract, LLC*, 961 N.Y.S.2d 542, 552-53 (N.Y.A.D. 2d Dep't 2013) (citations and quotation marks

omitted).[6]

Here, under Paragraph 1 of the Custody Agreement, Fiduciary Trust was an agent with Ackerman, and by extension, the Trust as its principal. **See** Custody Agreement, 7/31/98, at 1; Complaint, 9/10/12, at 4, 11-12; **see also** Trial Court Opinion, 5/21/13, at 7 (stating that under Paragraph 1 of the Custody Agreement, Fiduciary Trust was an agent and Ackerman or the Trust was the principal); Brief for Appellee at 26 (wherein Fiduciary Trust concedes that it was an agent of either Ackerman or the Trust as the principal). Under New York law, there is a fiduciary relationship between an agent and their principal. **Cristallina S.A. v. Christie, Manson & Woods Int'l, Inc.**, 502 N.Y.S.2d 165, 171 (N.Y.A.D. 1st Dep't 1986); **see also Sokoloff v. Harriman Estates Dev. Corp**., 754 N.E.2d 184, 188-89 (N.Y. 2001).

"Agency is a fiduciary relationship which results from the manifestation of consent of one person to allow another to act on his or her behalf and subject to his or her control, and consent by the other so to act." **G.K. Alan**

---

[6] As noted by the trial court, under New York law, the Trustees can maintain both a breach of contract claim and a breach of fiduciary duty claim. **See** Trial Court Opinion, 5/21/13, at 6; **Meyers v. Waverly Fabrics, Div. of F. Schumacher & Co.**,479 N.E.2d 236, 239 n.2 (N.Y. 1985) (stating that "a contracting party may be charged with a separate tort liability arising from a breach of duty distinct from, or in addition to, the breach of contract"); **see also GLM Corp. v. Klein**, 665 F.Supp. 283, 286 (S.D.N.Y. 1987) (stating that under New York law, "[i]f a contract establishes a relationship of trust and confidence between the parties, such as that between agent and principal, then a fiduciary duty arises from the contract which is independent of the contractual obligation.").

*Assoc. Inc. v. Lazzari*, 887 N.Y.S.2d 233, 238 (N.Y.A.D. 2d Dep't 2009) (citation and brackets omitted). "The duties of an agent are defined by the terms of the agreement that gave rise to the agency." *Id*. (citation omitted); *see also Mickle v. Christie's, Inc.*, 207 F.Supp.2d 237, 244 (S.D.N.Y. 2002) (stating that the fiduciary duties "of an agent may be defined and circumscribed by agreement between principal and agent."). "The basic tenet of a principal-agent relationship is that the principal retains control over the conduct of the agent with respect to matters entrusted to the agent, and the agent acts in accordance with the direction and control of the principal." *William Stevens, Ltd. v. Kings Village Corp.*, 650 N.Y.S.2d 307, 308 (N.Y.A.D. 2d Dep't 1996); *see also Maurillo v. Park Slope U–Haul*, 194 A.D.2d 142, 146 (N.Y.A.D. 2d Dep't 1992) (stating that an agent, who has a fiduciary relationship with the principal, "is a party who acts on behalf of the principal with the latter's express, implied, or apparent authority.").

Moreover, fundamental to the principal-agent relationship, an agent is under a duty to act with reasonable diligence in fulfilling its fiduciary obligation. *Leonard Smith, Inc. v. Merrill Lynch, Pierce, Fenner and Smith*, 483 N.Y.S.2d 847, 849 (N.Y.A.D. 3d Dep't 1985); *see also Sokoloff*, 729 N.Y.S.2d at 430 (citation, brackets, and quotation marks omitted) (stating that "[a]gents must act in accordance with the highest and truest principles of morality and, as fiduciaries, are forbidden from engaging

in many forms of conduct permissible in a workaday world for those acting at arm's length."); **Blonsky v. Allstate Ins. Co.**, 491 N.Y.S.2d 895, 897 (N.Y. Sup. 1985) (stating that "an agent is required to exercise good faith, reasonable diligence and such skill as is ordinarily possessed by persons of common capacity engaged in the same business."). "Included in this duty is the requirement that an agent obey all reasonable instructions and directions of the principal." **Leonard Smith, Inc.**, 483 N.Y.S.2d at 849. "As long as such directions are not unreasonable, the agent is bound to obey them, even if it appears that some other course of conduct was better than that which the [principal] chose." **William Stevens, Ltd.**, 650 N.Y.S.2d at 308. Under these guiding principles, we must determine whether the Trustees properly alleged misconduct by Fiduciary Trust, and whether the Trust suffered damages directly caused by the Fiduciary Trust's misconduct.

Here, the Trustees allege that Fiduciary Trust was not bound to obey Ackerman's unreasonable instructions as Fiduciary Trust was aware of the Trust Agreement's terms; Fiduciary Trust diverted most of the Trust assets to Ackerman for his personal use without Elizabeth's written authorization, Fiduciary Trust transferred funds to individuals and entities who were strangers to the Trust and Elizabeth; Fiduciary Trust knew the assets were being diverted to Ackerman for his personal use without Elizabeth's written approval; Fiduciary Trust never revealed the diversion of assets to Elizabeth; and Fiduciary Trust's actions caused the Trust to lose approximately nine

million dollars. *See* Complaint, 9/10/12, at 4-10, 11-12. While the Custody Agreement provided that Fiduciary Trust was to follow all of Ackerman's instructions, and Ackerman warranted that his instructions would be in accordance with the Trust Agreement, we conclude that the Trustees have sufficiently pled a breach of fiduciary duty claim. Indeed, the Trustees allegations, accepted as true and accorded every possible favorable inference, demonstrate that Fiduciary Trust failed in its duty to act with reasonable diligence with the Trust by obeying unreasonable directions from Ackerman, which resulted in the misappropriation of trust assets.[7] *See William Stevens, Ltd.*, 650 N.Y.S.2d at 308; *Leonard Smith, Inc.*, 483 N.Y.S.2d at 849; *see also Takayama v. Schaefer*, 669 N.Y.S.2d 656, 659 (N.Y.A.D. 2d Dep't 1998) (stating that an escrow agent becomes a representative of anyone with a beneficial interest in the trust, and can be held to be liable for breach of fiduciary duty as escrowee).

The trial court attempted to distinguish the holding in *Williams Stevens, Ltd.*, as follows:

> [I]t does not logically follow that Fiduciary Trust was [] required
> to disregard the "unreasonable" instructions. [The Trustees]

---

[7] The Trustees state that, in an Amended Complaint, they would have alleged that Fiduciary Trust second-guessed Ackerman's instructions relating to the Trust assets. *See* Brief for Appellant at 39-40; Amended Complaint at 8-9. The Trustees would have alleged that Fiduciary Trust directed Ackerman to obtain written consent and authorization from Elizabeth before using trust assets as security for the letters of credit and to obtain a legal opinion letter from a "reputable Pennsylvania lawyer" to show that Ackerman had the authority to take certain actions. *See* Brief for Appellant at 39-40; Amended Complaint at 8-9.

attempt to transform "As long as such directions are not unreasonable, the agent is bound to obey them" into "If such directions are unreasonable, the agent is bound to ignore them." The actual version of the statement appears to be for the protection of agents who refuse to honor unreasonable instructions. [The Trustees'] version attempts to turn agents in guarantors that their principals will never be permitted to do anything unreasonable.

Trial Court Opinion, 11/4/13, at 5; *see also* Trial Court Opinion, 5/21/13, at 8 (stating that "whatever the precise nature of Fiduciary Trust's fiduciary duties, those duties did not include the duty to second-guess instructions given to it by [Ackerman]. Indeed, Fiduciary Trust would have been violating its fiduciary duties under the principal-agent relationship if it refused to carry out [] Ackerman's instructions[.]").

In *Williams Stevens, Ltd.*, the New York appellate court set forth the relevant tenet of a principal-agent relationship and concluded that the principal, an owner of an apartment cooperative, was justified in terminating an agent where the agent filed an involuntary bankruptcy proceeding against cooperative's sponsor, and thereby acted directly contrary to the owner's instructions. *Williams Stevens, Ltd.*, 650 N.Y.S.2d at 307-08. The Court stated that the agent disobeyed the ostensibly reasonable directions of its principal to pursue a particular course of action. *Id*. at 308. While the trial court stated that the relevant statement of law cannot be utilized by any principal to support an action against an agent, the *Williams Stevens, Ltd.* Court does not explicitly limit its holding to prohibit such an application. Such a limitation would be unwarranted where, as here, an agent, Fiduciary

Trust, accepted unreasonable instructions from a trustee/principal, Ackerman, to the detriment of another principal, the Trust. Moreover, as noted by the trial court, **Williams Stevens, Ltd.** allows for "the protection of an agent who declines to follow unreasonable instructions." Trial Court Opinion, 11/4/13, at 5.

Here, the Trustees have sufficiently pled that Fiduciary Trust had a fiduciary relationship with the Trust, that Fiduciary Trust did not exercise reasonable diligence in fulfilling its responsibilities by following unreasonable instructions, and, as a result, the Trust suffered damages. Accordingly, we conclude that the Trustees have pled a breach of fiduciary duties claim and the trial court erred in granting Fiduciary Trust's Preliminary Objections as to this claim.

Based upon the foregoing, we affirm the trial court's Order, sustaining Fiduciary Trust's Preliminary Objections as to the Trustees' breach of contract claim. We reverse the Order sustaining the Preliminary Objections as to the Trustees' breach of fiduciary duty claim, and remand for further proceedings. Upon remand, the Trustees are free to file an Amended Complaint with regard to their breach of fiduciary duty and aiding and

abetting a breach of fiduciary duty claims.[8]

Order affirmed in part and reversed in part. Case remanded for further proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/22/2015

---

[8] We note that the trial court, in granting Fiduciary Trust's Preliminary Objections, did not dismiss the Trustees' claim for aiding and abetting a breach of fiduciary duty. The Trustees voluntarily discontinued the claim to file the instant appeal. "A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach[.]" **_Kaufman v. Cohen_**, 760 N.Y.S.2d 157, 169 (N.Y.A.D. 1st Dep't 2003). "A person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator." **_Baron v. Galasso_**, 921 N.Y.S.2d 100, 104 (N.Y.A.D. 2d Dep't 2011) (citation omitted). "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." **_Kaufman_**, 760 N.Y.S.2d at 170. "However, the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." **_Id_**.