Louis Morizio, Plaintiff,

against
Gregory A. Roeder, Matthew P. Reiner and Adirondack Research and Management Inc., Defendants.


3005-12

The Wagoner Firm PLLC
Attorneys for Plaintiff
(Matthew Wagoner and Amanda Kukle, of counsel)
8 Thurlow Terrace
Albany, New York 12203
E. Stewart Jones Hacker Murphy, LLP
Attorneys for Defendants Gregory Roeder and Matthew Reiner
(James E. Hacker and Thomas J. Higgs, of counsel)
28 Second Street
Troy, New York 12180
Jackson Lewis, P.C.
Attorneys for Defendant Adirondack Research and Management, Inc.
(Rosemary Weaver McKenna, of counsel)
667 Broadway
Albany, New York 12207


Richard M. Platkin, J.

Plaintiff Louis Morizio, an alleged shareholder and former employee of defendant [*2]Adirondack Research and Management, Inc. ("ARMI"), commenced this commercial action in 2012, seeking to recover damages for breach of contract, fraud, tortious interference with contract, breach of fiduciary duty and unjust enrichment. Plaintiff also petitioned for the judicial dissolution of ARMI pursuant to Business Corporation Law ("BCL") § 1104-a, claiming to be an oppressed minority shareholder who holds a 25% voting interest in the corporation.
In a Decision & Order dated February 14, 2014 ("Prior Decision"), the Court granted defendants' motion for an order allowing them to make a late election under BCL § 1118, denied plaintiff's cross motion seeking to conditionally withdraw his BCL § 1104-a claim pursuant to BCL § 1116 if the Court allowed defendants to make a late election, and granted defendants' motion pursuant to CPLR 3211 to dismiss certain causes of action alleged in the Amended Verified Complaint ("Complaint"). As is pertinent here, the cause of action alleging breach of fiduciary duty was dismissed because it was not pled with the heightened particularity required by CPLR 3016 (b).
Since issuance of the Prior Decision more than three years ago, the parties have engaged in extensive fact discovery regarding the remaining non-dissolution claims and defendants' counterclaims. With respect to the BCL § 1118 (b) buy-out remedy, both sides have engaged experts to value plaintiff's interest in ARMI immediately prior to the commencement of this action. Despite repeated delays attendant to substitutions of counsel,[FN1]
discovery now is substantially complete.[FN2]

Plaintiff moves pursuant to CPLR 2221 (e) to renew his cross motion for an order granting him leave to discontinue his cause of action for judicial dissolution, alleging that newly discovered evidence establishes that he lacks the 20% voting interest required to maintain a claim under BCL § 1104-a. Plaintiff also seeks leave to amend the Complaint to replead his cause of action for breach of fiduciary duty.
RENEWAL
Plaintiff contends that new shares of stock issued by ARMI in 2011 had the effect of diluting his voting interest in the corporation to 18.75%, which is below the 20% threshold required by BCL § 1104-a (a). While plaintiff acknowledges that the board of directors issued the new stock as a class of non-voting shares, he argues that the shares must be deemed by operation of law to carry voting rights.
Plaintiff bases this argument on the language of the amended certificate of incorporation dated March 9, 2011 ("Amended Certificate"), which authorized the issuance of new shares "with such rights, designations, and preferences as the Board of Directors may time to time [*3]determine". Plaintiff argues that this language is legally insufficient under BCL § 501 (a) and (c) to authorize the issuance of non-voting shares.
Plaintiff contends that he was unaware of this alleged dilution of his voting interest when the cross motion was litigated and asserts that the renewal motion "is based upon facts that came to light after [the Prior Decision] was rendered" (Plaintiff's Memorandum of Law in Support ["MOL"], at 1). Specifically, plaintiff alleges that defendants "concealed key facts from him", and it was not until his most recent counsel reviewed defendants' "tardy document production" that he learned that ARMI's certificate of incorporation had not been properly amended to authorize non-voting shares (id., at 1, 8). Plaintiff also contends that his delay in bringing this motion was reasonable, citing his representation by three different law firms since the Prior Decision was issued.
In opposition, defendants deny plaintiff's allegations of wrongdoing and argue that the facts underlying plaintiff's new argument and the documentary evidence upon which it is based, including the Amended Certificate, were in plaintiff's possession at the time of the prior motion practice and, in fact, even before he commenced this action in 2012. Further, insofar as plaintiff relies upon his lack of awareness of his voting interest in ARMI, defendants observe that the motion is supported only by an attorney affirmation. Defendants also contend that plaintiff has not submitted a satisfactory excuse for his protracted delay in raising the issue of dilution.
With respect to the merits, defendants argue that there is nothing in the Business Corporation Law that prohibited the shareholders of ARMI from amending the certificate of incorporation to allow the board of directors to prescribe the voting rights of a newly-issued class of shares. Defendants observe that ARMI's intention to issue non-voting shares was fully disclosed to all shareholders and directors (including plaintiff), the corporation consistently has treated the new class of shares as non-voting in the six years since issuance, and plaintiff does not allege any diminution of his own voting rights.
Defendants further contend that any reconfiguration of the voting rights of ARMI's shareholders would jeopardize the corporation's contract with the Adirondack Small Cap Fund ("Fund"), its principal client. Defendants explain that the contract between ARMI and the Fund automatically terminates upon any change in voting interests, and there is some possibility that the shareholders of the Fund would not agree to renew the contract. Thus, if the Amended Certificate were held insufficient to support the issuance of non-voting shares, defendants urge the Court either to treat the shares as void ab initio or to impose an equitable remedy that allows the new shares to retain their non-voting character, consistent with the intention of ARMI's shareholders and the manner in which the shares always have been treated.
A motion for leave to renew "shall be based upon new facts not offered on the prior motion that would change the prior determination" (CPLR 2221 [e] [2]; see Abele Tractor & Equip. Co., Inc. v RJ Valente, Inc., 79 AD3d 1331, 1332 [3d Dept 2009] ["new and previously undiscoverable material facts"]). Such motion "shall contain reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221 [e] [3]).
The record shows that on February 24, 2011, defendants gave plaintiff notice, both by the U.S. Mail and electronic means, of a shareholder meeting scheduled for March 9, 2011. Along with the notice, plaintiff received a copy of the proposed Amended Certificate authorizing the issuance of additional shares "with such rights, designations, and preferences as the Board of [*4]Directors may time to time determine". Plaintiff also received a proposed resolution of the board of directors authorizing the issuance of forty shares of Class B stock without voting rights.
Accordingly, there is no merit to plaintiff's contention that the relevant facts were somehow "hidden" from him by defendants (MOL, at 9) or that his new argument was discoverable only through the examination of documents obtained from defendants during pre-trial disclosure. In fact, plaintiff's own Complaint cited an improper dilution of his interest in ARMI (see ¶¶ 46-47, 65 [G]), an issue that specifically was mentioned in the Prior Decision (see p 8). Thus, the Court finds that the facts upon which the renewal motion is based were in plaintiff's possession when he commenced this lawsuit in 2012 and when he cross-moved for leave to withdraw his BCL § 1104-a cause of action in 2014.
Equally without merit is plaintiff's claim that his delay in raising the dilution argument was due to defendants' misrepresentations of his voting interest. Until the issue was raised by plaintiff's motion for renewal, all parties — including plaintiff — acted in accordance with the belief that the Class B shares were non-voting and plaintiff, therefore, continued to possess a 25% voting interest in ARMI. Further, plaintiff consistently was accorded this 25% voting interest at shareholder meetings he attended, and he voted this interest at several such meetings. In addition, all of ARMI's books and records, including its stock register, reflect plaintiff's ownership of a 25% voting interest, and the same voting interest was reported in disclosures made by ARMI to the Internal Revenue Service, the Securities & Exchange Commission and the board of trustees of the Fund (of which plaintiff was a member). The fact that plaintiff and his counsel now seek to imbue the new shares with voting rights based upon a novel and highly technical application of the Business Corporation Law does not make defendants guilty of misrepresenting the voting character of the Class B shares.
Given the overwhelming proof that his new argument is not based on newly discovered evidence, plaintiff takes a different tack in his reply papers, suggesting that "where the basis for renewal is meritorious . . . courts apply an interest of justice standard, and grant renewal" (Plaintiff's Memorandum of Law in Reply, at 4). The Court declines plaintiff's invitation to read out of CPLR 2221 one of its core requirements: that the motion for renewal be supported by proof of a "reasonable justification for the failure to present [the new] facts on the prior motion" (id. [e] [3]).[FN3]

To be sure, the Court recognizes its discretion to relax the requirements of CPLR 2221 (e) in exceptional cases and grant renewal in furtherance of the interests of justice (see e.g. Mejia v Nanni, 307 AD2d 870, 871 [1st Dept 2003]). However, the Court finds, in the exercise of discretion, that granting renewal here would not further the interests of justice.
Plaintiff did not perfect his appeal from the orders allowing defendants to make a binding election under BCL § 1118 and denying him leave to withdraw his BCL § 1104-a claim (Higgs Aff., Ex D). In the intervening three years, considerable resources, including substantial expert and counsel fees, have been devoted to determining the fair value of plaintiff's interest in ARMI. [*5]Meanwhile, the parties' acrimony and ill will towards one another appears to have only increased throughout the course of this litigation.
Even if the Court were to consider and adopt plaintiff's dilution argument and authorize discontinuance of the BCL § 1104-a claim under BCL § 1116, the parties' longstanding conflict and contention are likely to engender future litigation of the issues raised by the dissolution claim. If plaintiff's voting interest in ARMI were found to be less than 20% and that were the final word on the matter, plaintiff presumably would recast his complaints of ongoing oppression by Roeder and Reiner in the form of the common-law remedies available to minority shareholders, including claims for breaches of fiduciary duty and the like.
On the other hand, a finding that the Amended Certificate suffers from a technical flaw that leaves it legally ineffective to accomplish its intended purpose might not be the final word on plaintiff's voting interest. ARMI already has raised the prospect of petitioning for judicial reformation of the Amended Certificate, and plaintiff himself proposes to challenge the propriety of the issuance of new shares.[FN4]
Moreover, ARMI shareholders could respond to such a finding by further amending the certificate of incorporation to validate the issuance of the non-voting shares or by canceling the new shares. Regardless, the result is the same: plaintiff would be free to recommence a claim for the judicial dissolution of ARMI, bringing the case back to where it was in 2012.[FN5]

Thus, this is not a case where allowing voluntary discontinuance of a claim for judicial dissolution pursuant to BCL § 1116 would avoid the need for further litigation between the parties (cf. Matter of Ryan [Integra Networks, Inc.], 40 Misc 3d 1204 [A] [Sup Ct, Albany County 2013] ["dismissal with prejudice of this proceeding and the formal change in position by the minority shareholder have eliminated the causes of dissolution and there are no proven impediments to the successful operations of the corporation going forward"]). And if the parties must continue to litigate against one another, the interests of justice and economy weigh heavily in favor of doing so in this action.
It is, of course, entirely natural and proper for new counsel substituted into a case to see potential issues and arguments that were not made, and perhaps not even fully explored, by predecessor counsel.[FN6]
 But litigation decisions have consequences. For this reason, a party seeking renewal must not only present new facts "that would change the prior determination", but also a "reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221 [e] [2], [3]).
Here, plaintiff filed a verified complaint alleging a voting interest in ARMI of at least 20%, defendants did not challenge plaintiff's standing to pursue dissolution under BCL § 1104-a, plaintiff did not raise the issues of dilution or standing in the prior motion practice, the argument that plaintiff now seeks to make is based upon facts that were available to him before he commenced this action, and plaintiff lacks a reasonable excuse for failing to raise the argument previously. Under the circumstances, plaintiff has not established that the prerequisites for renewal under CPLR 2221 (e) have been met. Nor has plaintiff shown that the interests of justice would be furthered by relaxing the requirements of CPLR 2221 (e). Accordingly, the motion for renewal is denied.
In light of this conclusion, it is unnecessary to consider the merits of plaintiff's new dilution argument. The Court does observe, however, that plaintiff has not cited a single case holding that the language of the Amended Certificate authorizing the issuance of shares "with such rights, designations, and preferences as the Board of Directors may time to time determine" is legally ineffective to create non-voting shares where, as here: (a) no shareholder is claiming a deprivation of voting rights;[FN7]
(b) no intervening rights of third parties have been affected; (c) the clear intention of the corporation and its shareholders was to issue a new class of non-voting shares; (d) the new shares have been treated as non-voting since issuance; and (e) there is no legal impediment to correcting any alleged technical defect in the Amended Certificate. In fact, the Court of Appeals has upheld the common-law authority of a court to address the type of situation presented by plaintiff's dilution argument through the equitable doctrines of reformation and/or estoppel (Zion v Kurtz, 50 NY2d 92, 102 [1980]; see also 1-5 White, New York Bus. Entities, P B501.01).[FN8]
And insofar as plaintiff argues in reply that it would be inappropriate to consider defendants' reformation argument because not all of ARMI's shareholders are parties to this action, that further counsels against considering the merits of plaintiff's new argument in the present procedural context.
AMENDMENT
The second branch of plaintiff's motion seeks leave to amend the Complaint to add a claim for breach of fiduciary duty. The Complaint originally included such a claim, but it was dismissed at the outset of the case due to plaintiff's failure to comply with the heightened pleading requirement of CPLR 3016 (b) (see Prior Decision, at 9-10). Defendants oppose the motion, contending that plaintiff has failed to meet his burden of establishing that amendment is [*6]proper under CPLR 3025 (b).
A motion for leave to amend a pleading should be freely granted, provided that there is no prejudice or surprise to the nonmoving party and the amendment is not plainly lacking in merit (CPLR 3025 [b]; Smith v Haggerty, 16 AD3d 967, 967-968 [3d Dept 2005]). "Although delay alone is insufficient to bar amendment, denial of a motion to amend is appropriate when there is prejudice to the opposing party and no showing of a satisfactory excuse for the delay" (Gersten-Hillman Agency v Heyman, 68 AD3d 1284, 1289 [3d Dept 2009] [internal quotation marks and citations omitted]).
Further, the movant is required "to make an[] evidentiary showing that the proposed amendments have merit" (Dinstber v Allstate Ins. Co., 110 AD3d 1410 [3d Dept 2013]; see Bast Hatfield, Inc. v Schalmont Cent. School Dist., 37 AD3d 987, 988 [3d Dept 2007]).[FN9]
 While "[a] summary judgment standard is not to be applied" (Bast Hatfield, 37 AD3d at 988), the proponent must "provide some evidence of merit" (Chianis & Anderson Architects, PLLC v Courterback Dev. Co., LLC, 140 AD3d 1286, 1289-1290 [3d Dept 2016] [internal quotation omitted]).
The Court concludes that the branch of the motion seeking leave to amend the complaint must be denied. As an initial matter, the motion is unsupported by an affidavit of merit, and plaintiff's moving papers otherwise fail to establish the potential merit of the new claim and its supporting factual allegations. Further, the Court is unconvinced by plaintiff's argument that the "claims have merit on their face" because "[p]laintiff is merely repleading claims that were dismissed for lack of particularity" (Plaintiff's Memorandum of Law in Reply, at 14). If plaintiff has, in fact, supported his claim for breach of duty with particularized factual allegations, it is plaintiff's burden to demonstrate the potential merit of such particularized allegations.
Even assuming that plaintiff's failure to adequately support his motion with an affidavit of merit can be remedied by the new proof submitted for the first time in reply, the Court further concludes, in the exercise of discretion, that plaintiff's protracted and unexplained delay in seeking amendment, together with the resulting prejudice to defendants, independently warrants denial of the motion.
It has been more than three years since plaintiff's cause of action alleging breach of fiduciary duty was dismissed for pleading insufficiency. In the interim, fact and expert discovery has been substantially completed, and the note of issue is due to be filed in short order. To inject a wide range of new factual issues into the case at this late date — including the compensation paid by ARMI to Roeder and Reiner, their personal stock trades over the years, the propriety of [*7]the corporation's personnel decisions, and the facts and circumstances surrounding the 2011 stock issuance — would expose defendants to substantial delay and expense that could have been avoided had plaintiff exercised even minimal diligence. And neither plaintiff's moving papers nor his affidavit in reply provide any excuse, satisfactory or otherwise, for plaintiff's lengthy delay in seeking amendment.
Plaintiff contends that there is "nothing surprising or new about [the proposed] cause of action other than it being more particularly pled" (Plaintiff's Memorandum of Law in Reply, at 15), but this argument misses the point. Plaintiff took no action over a period of almost three years to replead a cause of action that was dismissed for a pleading deficiency at the outset of the case. Under these circumstances, the surprise stems from plaintiff's belated attempt to resurrect a claim that reasonably appeared to have been abandoned.
Contrary to plaintiff's contention, the circumstances presented by this motion are nothing like Gonick v ARMI (Index No. A456-2014), an unrelated case involving ARMI that is pending in this Court. In Gonick, the plaintiff sought leave to amend his complaint based on deposition testimony in which the defendants denied the existence of the employment contract sued upon by Gonick. In light of the defendants' belated denial of the existence of a contractual relationship, Gonick sought leave to also pursue recovery in quasi-contract.[FN10]
Here, in contrast, the motion to amend is not premised on an alleged change in position by defendants or on newly discovered evidence to any significant degree.
In sum, granting plaintiff's motion at this late date would prejudice defendants and delay the resolution of an action that already has been pending for far too long. Accordingly, in the absence of a reasonable excuse for plaintiff's protracted delay in seeking leave to amend, it would be an improvident exercise of discretion to allow plaintiff to serve a further amended complaint under the particular facts and circumstances of this case.
CONCLUSION
Based on the foregoing, it is
ORDERED that plaintiff's motions are denied in all respects.
This constitutes the Decision & Order of the Court. This Decision & Order is being transmitted to defendants' counsel for filing and service, and all motion papers are being transmitted to the Albany County Clerk. The signing of this Decision & Order shall not constitute entry or filing under CPLR Rule 2220, and counsel is not relieved from the applicable provisions of that Rule respecting filing, entry and Notice of Entry.
Dated: February 17, 2017
Albany, NY
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
Notice of Motion, dated November 16, 2016;
Affirmation of Matthew Wagoner, Esq., dated November 17, 2016; with Exhibits A-F;
Plaintiff's Memorandum of Law;
Affirmation of Thomas J. Higgs, Esq., sworn to December 8, 2016, with Exhibits A-S;
Affidavit of Gregory A. Roeder, sworn to December 8, 2016, with Exhibits A-Q;
Affirmation of Rosemary Weaver McKenna, Esq., dated December 8, 2016, with Exhibits A-C;
Reply Affirmation of Matthew Wagoner, Esq., dated December 15, 2016, with Exhibits A—C;
Reply Affidavit of Louis Morizio, sworn to December 15, 2016, with Exhibits A-D;
Plaintiff's Memorandum of Law in Reply.



Footnotes

Footnote 1:By November 2014, plaintiff had terminated the law firm of Lombardi, Walsh, Davenport & Amodeo, P.C. The firm of Dreyer Boyajian LLP was substituted in as counsel to plaintiff in early 2015, but it encountered delays in obtaining the file. Plaintiff then terminated the Dreyer Boyajian firm by Summer 2016, and plaintiff was self-represented for a period of several months. Plaintiff retained his current counsel in or about September 2016.

Footnote 2:There remains one non-party deposition to be completed, as well as some lingering issues regarding a third-party subpoena recently issued by plaintiff that is said to encompass certain documents subject to a protective order.

Footnote 3:Insofar as the motion is predicated on facts in the possession of plaintiff during the prior motion practice and plaintiff "moves on a different legal argument merely because he was unsuccessful upon the original application", the application effectively is an untimely motion for reargument, not renewal (Brooklyn Welding Corp. v Chin, 236 AD2d 392 [2d Dept 1997]).

Footnote 4:Plaintiff's proposed amended complaint seeks to allege that Roeder and Reiner authorized the new shares in violation of fiduciary duties owed to plaintiff.

Footnote 5:Such an outcome may be perfectly acceptable to plaintiff, who believes that his interest in ARMI has appreciated substantially since the commencement of this action and who has made plain throughout the course of this litigation his dissatisfaction with a buy-out that values his interest in the corporation as of commencement.

Footnote 6:In reply, plaintiff makes the unsupported and unpersuasive argument that his failure to raise the dilution claim in the prior motion practice was the product of attorney error.

Footnote 7:The cases relied upon plaintiff involve a complaining shareholder who alleged an improper deprivation of voting rights (see e.g. Aini v Garau, 244 AD2d 442 [2d Dept 1997]). Here, in contrast, plaintiff seeks to assert a claim that he is being accorded a voting interest in excess of that to which he is entitled.

Footnote 8:Plaintiff claims he did not assent to the issuance of the new shares in 2011, but the record shows that he failed to attend the shareholder and directors meetings at which the new shares were authorized, despite having received notice thereof. Accordingly, while plaintiff may not have expressly assented to the issuance of non-voting shares, the record certainly contains proof of acquiescence. The record further establishes that plaintiff declined the opportunity to purchase any of the new shares.

Footnote 9:This is in apparent contrast to the current practice in the Appellate Division, Second Department, which held in 2008 that "[c]ases involving CPLR 3025 (b) that place a burden on the pleader to establish the merit of the proposed amendment erroneously state the applicable standard and are no longer to be followed. No evidentiary showing of merit is required under CPLR 3025 (b)" (Lucido v Mancuso, 49 AD3d 220, 230 [2d Dept 2008]; see also Fairpoint Cos., LLC v Vella, 134 AD3d 645 [1st Dept 2016] [movant need only show that "the proffered amendment is not palpably insufficient or clearly devoid of merit" [internal quotation omitted]; Landers v CSX Transp., Inc., 70 AD3d 1326, 1327 [4th Dept 2010] ["A court should not examine the merits or legal sufficiency of the proposed amendment unless the proposed pleading is clearly and patently insufficient on its face" (internal quotations omitted).]).

Footnote 10:Plaintiff also sought leave to assert a claim of fraud, but that claim was based upon defendants' alleged misrepresentations regarding the existence and effectiveness of the alleged contract.